# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00266-COA

| | |
|---|---|
| STEWART CHASE VAUGHN A/K/A STEWART C. VAUGHN A/K/A STEWART VAUGHN A/K/A STUART CHASE VAUGHN | APPELLANT |

v.

| | |
|---|---|
| STATE OF MISSISSIPPI | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2013 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SALE OF METHAMPHETAMINE AND SENTENCED AS A HABITUAL OFFENDER AND A SUBSEQUENT DRUG OFFENDER TO SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $10,000 FINE |
| DISPOSITION: | AFFIRMED – 09/29/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

BEFORE IRVING, P.J., BARNES AND FAIR, JJ.

IRVING, P.J., FOR THE COURT:

¶1.     Stewart Vaughn appeals from the judgment of the Circuit Court of Rankin County sentencing him, as a habitual and subsequent drug offender, to a term of sixty years in the custody of the Mississippi Department of Corrections (MDOC) for his conviction of the sale

of methamphetamine. He asks this Court to decide whether, during trial, the circuit court erred in failing to sua sponte exclude certain evidence and whether the amendment of the indictment prejudiced his defense.

¶2. Finding no error, we affirm.

## FACTS

¶3. On November 8, 2012, at around 11:30 p.m., Vaughn, during a "bust buy," sold approximately three grams of methamphetamine to James Denton, a confidential informant working with the Rankin County Sheriff's Department. Denton purchased the drugs with marked cash.

¶4. During the early morning of November 9, 2012, officers arrested Vaughn and his companion, Tammy Brewer, as Vaughn and Brewer were traveling in a sedan driven by Brewer.[1] Following her arrest, Brewer, in response to questioning, informed investigators that Vaughn had thrown cash from the front-passenger-side window of the sedan. During a subsequent video-recorded interrogation session, Brewer repeated her initial statement.

¶5. Soon after the arrest, in an attempt to find the discarded cash, officers searched the area near the location of the arrest; however, because it was dark at that time, they suspended the search until later that day. During the follow-up search, officers discovered the marked cash, along with other unidentified funds.

¶6. After a grand jury indicted Vaughn for the sale of methamphetamine, the State filed

---

[1] Vaughn was Brewer's only passenger.

a motion to amend the indictment to charge him as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Supp. 2014). Without an objection by Vaughn, the circuit court granted the amendment, and the case went to trial on October 28, 2013.

¶7. Prior to trial, Vaughn filed a motion to suppress "all evidence, [including the cash;] [any] alleged contraband[;] [his] identity[;] and all statements[,] [including Brewer's statements to officials,] and testimony concerning the alleged contraband." The circuit court granted the motion as to Brewer's recorded statement but withheld its ruling on the admissibility of the remaining evidence. The court informed Vaughn that, during trial, he could renew his motion to suppress or object to the introduction of that evidence.

¶8. In its opening statement, the State mentioned Brewer's initial statement, but Vaughn failed to object. The State then adduced testimony regarding Brewer's initial statement, and Vaughn failed to object to that testimony, as well. During its closing argument, the State attempted to repeat Brewer's initial statement to the jury, and Vaughn objected. The circuit court sustained the objection. After a jury convicted Vaughn, he filed a motion for a judgment notwithstanding the verdict (JNOV), which the circuit court denied. This appeal ensued.

DISCUSSION

*I. Exclusion of Evidence*

¶9. "The standard of review for either the admission or exclusion of evidence is abuse

of discretion." *Pryer v. State*, 958 So. 2d 818, 820 (¶5) (Miss. Ct. App. 2007) (quoting *Perry v. State*, 904 So. 2d 1122, 1124 (¶7) (Miss. Ct. App. 2004)). "This Court will not reverse an erroneous admission or exclusion of evidence unless the error adversely affects a substantial right of a party." *Id.* at 820-21 (¶5) (quoting *Perry*, 904 So. 2d at 1124 (¶7)).

¶10. On appeal, Vaughn argues that during the trial, the circuit court erred in failing to sua sponte "enforce[] its ruling precluding [the admission of] hearsay . . . statement[s]." More specifically, Vaughn argues that the circuit court should have excluded Denton's testimony because there was a lack of physical evidence showing that the person Denton called prior to the "bust buy" was Vaughn or that Vaughn was the individual who sold the methamphetamine to Denton. Vaughn points out that Denton admittedly orchestrated the "bust buy" to avoid criminal charges against himself. Consequently, he insists that Denton's testimony was unreliable and constituted inadmissible hearsay that the circuit court should have excluded.

¶11. Likewise, Vaughn insists that Investigator Raymond Duke's testimony regarding Brewer's initial statement constituted inadmissible hearsay because when Brewer provided her initial statement, she was implicated in a crime. Vaughn also insists that Brewer provided the statement in response to police interrogation. Further, Vaughn argues that Investigator Duke's testimony regarding Brewer's initial statement violated the principle set

4

forth in *Crawford v. Washington*, 541 U.S. 36 (2004),[2] because Vaughn was not given an opportunity to cross-examine Brewer. Lastly, Vaughn argues that any reference to Brewer's statements was prohibited by the circuit court's ruling on his motion to suppress.

¶12. In response, the State argues that the circuit court's pretrial ruling only excluded Brewer's recorded statement and that it was Vaughn's obligation to object to the admission of any evidence regarding Brewer's initial statement. The State contends that Vaughn's failure to raise a contemporaneous objection during Denton's and Investigator Duke's testimonies bars his claims on appeal. The State also argues that the circuit court did not err in failing to sua sponte exclude Investigator Duke's testimony regarding Brewer's initial statement.

¶13. The State further argues that there was no *Crawford* violation because during the trial, Brewer's initial statement to law enforcement—that Vaughn tossed something out of the window of the vehicle while he was being pursued—was not admitted into evidence. The State, however, admits, as the record shows, that during its closing argument, the State disclosed that officers learned from Brewer that Vaughn had tossed something from the car before the arrest. But, the State points out that it was defense counsel who, during cross-examination of Investigator Duke, elicited the identity of the person who tossed the items

---

[2] In *Crawford*, the Supreme Court found that it is a violation of a defendant's right to confront witnesses against him for a court to admit "testimonial statements of a witness who d[oes] not appear at trial unless [the witness is] unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 53-54.

out of the window of the car prior to the car being stopped by law enforcement officers. Additionally, the State argues that Investigator Duke's testimony concerning Brewer's initial statement was not hearsay because it was not offered into evidence to prove the truth of the matter asserted.

¶14. During the hearing on Vaughn's motion to suppress, the circuit court stated:

> Well, first, the State has agreed that the video statement of Brewer is not admissible[,] or they're not going to seek to introduce [it] at this time . . . unless something were to make it relevant during the course of trial[.] [A]nd [the court] agree[s] that there[] [would] be a [C]onfrontation [Cl]ause problem with providing any statements.
>
> So to the extent [that Vaughn is] seeking to suppress the video statement of . . . Brewer[,] that will be granted unless something else makes that admissible during the course of the trial. Certainly, [she] would have to be . . . testifying before that video statement would be admissible.
>
> As it relates to . . . any evidence that law enforcement found on the side of the road where the alleged sale took place, [the court will] just have to wait [until] trial to see what evidence could make that relevant and make it admissible.
>
> ****
>
> But . . . you're certainly free to object to anything that comes up during the course of the trial that you believe is inappropriate.
>
> ****
>
> [The court is] going to withhold ruling on the admissibility of any evidence that was found on the side of the road, but [the court will] grant the motion to the extent that it excludes the video statement of Brewer.

¶15. During trial, in its opening statement, the State informed the jury:

> In their investigation, [officers] learn[ed] from . . . Brewer that . . . Vaughn had thrown some items out of the window of the car before [she] stopped for

6

the police. You're going to hear testimony from [Investigator] Duke . . . that that night in the dark[,] [officers] looked to find some items that had been thrown.

**\*\*\*\***

The next morning at daylight[,] they [went] back[,] and they searched[,] and they [found] a wad of money on the side of the road[—]what would be on the passenger's side of the road.

¶16. During the State's case-in-chief, Denton testified that on November 8, 2012, he was arrested for possession of methamphetamine. He also testified that following his arrest, he met with Detective Brett McAlphin, who asked him to arrange the "bust buy" with Vaughn. Denton admitted that he agreed to do so in order to avoid criminal charges. He further testified that he called Vaughn to set up the buy. According to Denton, after he organized the transaction, Officer Tim Covington drove him, in an unmarked van, to the location of the sale, where they met Vaughn, who was driving a red sports-utility vehicle (SUV). Denton stated that after Vaughn arrived, he parked the SUV behind the van. Then, as Officer Covington waited in the van, Denton walked to the driver's side of the SUV and purchased the methamphetamine from Vaughn. Denton further stated that when he returned to the van, he gave the methamphetamine to Officer Covington. Vaughn failed to raise an objection during Denton's testimony.

¶17. During Investigator Duke's testimony, the following colloquy took place:

STATE:   Did you speak with [Brewer] at any point during -- concerning why she was being arrested?

DUKE:   Oh, absolutely.

7

STATE:     As part of your investigation and your talking to . . . Brewer, were you able to determine if anything was thrown from the vehicle?

DUKE:      Based on my investigation, yes, items were thrown out of the vehicle.

****

STATE:     Okay[,] [a]fter you learned that something had been thrown from that car, was any attempt made to recover anything that may have been thrown from it?

DUKE:      For an extended period of time, myself and other officers [conducted a search—]even had some patrol guys come out to assist[.]

****

STATE:     Did you find anything that night?

DUKE:      We did not find anything that night.

STATE:     Was there any other effort made to locate anything that was thrown from the car?

DUKE:      The following morning[,] I put together a work detail. We went out to the area in question. . . . We did locate some items[.]

STATE:     Was there any money that was found?

DUKE:      Yes.

¶18. In its closing arguments, the State informed the jury that "[n]obody had any idea about the money being thrown out of the vehicle [until] they talked to . . . Brewer[,] who was the driver [and who said], '[Vaughn] threw something out of the vehicle.' Well, then they go out and they look for it[.]" At that point, Vaughn objected, and the circuit court

8

sustained the objection. Following the court's ruling, the State proceeded with its closing argument, informing the jury that "[the money] was in the woods at night. They find it. . . . [Detective] McAlphin takes it. Guess what? . . . [It was] buy money that[] [was] found." After the State made those comments to the jury, Vaughn moved for a mistrial, and the circuit court ultimately overruled that motion.

¶19. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). Here, Vaughn has failed to identify any hearsay statements made by Investigator Duke during his testimony. While it clearly can be inferred from Investigator Duke's testimony, as set forth above, that he learned from Brewer that someone threw something from the car, it cannot be legitimately argued that Investigator Duke testified that Brewer told him that Vaughn tossed something from the car. While it is true that the State, in its opening statement and closing argument, stated that Brewer told law enforcement officers that Vaughn had tossed some items out of the car before she and Vaughn were stopped by the officers, it is equally true that our jurisprudence is clear: statements of prosecutors and defense counsel made during opening statements and closing arguments are not evidence. *See Slaughter v. State*, 815 So. 2d 1122, 1130-33 (¶¶44-58) (Miss. 2002). As the State correctly points out, the only statement as to the identity of the person who threw the items out of the car came into evidence as a result of the following exchange between Vaughn's counsel and Investigator Duke:

9

DEFENSE COUNSEL:  Now [the prosecutor] stated that some objects were discarded from that vehicle. Did you see those objects being discarded[?]

DUKE:  Did I see them being discarded? No, I did not.

DEFENSE COUNSEL:  So you don't know who discarded those objects from the vehicle[?]

DUKE:  Based on my investigation, it was your client.

And again, as the State points out, our law is well settled that a defendant cannot complain about evidence that he himself elicits or otherwise causes to be brought out during the course of his trial. *Rogers v. State*, 85 So. 3d 293, 296 (¶13) (Miss. 2012) (quoting *Fleming v. State*, 604 So. 2d 280, 289 (Miss. 1992)).

¶20.   As to Vaughn's argument that the circuit court should have sua sponte disallowed the evidence regarding Brewer's statement because of the court's pretrial ruling excluding that evidence, it suffices to say that he has misread the court's pretrial ruling. During the hearing on Vaughn's motion to suppress, the circuit court withheld its ruling on the admissibility of any evidence regarding any items that were found on the side of the road as a result of the search that was prompted by Brewer's statement to the officers that Vaughn had thrown some items from the vehicle before they were pulled over. In its ruling, the circuit court ruled that Brewer's video-recorded statement would not be admitted unless something occurred during the trial that would make it admissible. However, the court said nothing about the admissibility of Brewer's initial statement that led to the search. The court specifically advised defense counsel that he was "free to object to anything that [came] up

10

during the course of the trial that [he] believe[d] [was] inappropriate." As noted, Vaughn failed to do so. "[A trial court] cannot be faulted for not ruling on an objection which was not made[.]" *Havard v. State*, 928 So. 2d 771, 793 (¶39) (Miss. 2006). Therefore, this issue has been waived.

¶21. Vaughn's argument that Investigator Duke's testimony regarding what the officers learned after talking to Brewer amounts to a violation of his constitutional right of confrontation as enunciated in *Crawford* is without merit. "The Confrontation Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Moore v. State*, 1 So. 3d 871, 876 (¶20) (Miss. Ct. App. 2008) (citations omitted). In this case, Investigator Duke's testimony that he learned from Brewer that some items were thrown out the window of the car was offered into evidence to explain why the officers searched the area near the location of the arrest, not to prove the truth of Brewer's statement. Therefore, accepting Vaughn's argument that a fair construction of Investigator Duke's testimony is that Brewer told officers that Vaughn threw some items out of the car, we still find no *Crawford* violation because the statement was not offered to prove that Vaughn threw the items out of the window.

## II. *Amendment of the Indictment*

¶22. Citing *Gowdy v. State*, 56 So. 3d 540 (Miss. 2010), Vaughn argues that the amendment of the indictment prejudiced his defense because the circuit court's plea date passed before the State moved to amend the indictment. Vaughn also argues that the

amendment was prejudicial because the State did not provide him with adequate notice of the motion to amend. Vaughn further argues that the amendment prejudiced his defense because based on his belief that the State would not charge him as a habitual offender, he rejected plea-bargain offers made by the State. In response, the State argues that because Vaughn failed to object to the amendment, he cannot now claim that it prejudiced his defense.

¶23. Rule 7.09 of the Uniform Rules of Circuit and County Court Practice states:

> All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement[.] Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.

¶24. On March 21, 2013, the grand jury indicted Vaughn, charging him as a subsequent offender under Mississippi Code Annotated section 41-29-147 (Rev. 2013). Then, on August 6, 2013, the State filed its motion to amend the indictment, requesting

> that the indictment . . . be amended by inserting the following language[]:

> > The Defendant has been convicted twice previously upon separate charges brought and arising out of separate incidents at different times and has been sentenced to separate terms of one (1) year or more in a state penal institution as shown by the following:

> > > That said Defendant has been convicted in the Circuit Court of Rankin County, Mississippi[,] in Cause No. 23170, for [c]onspiracy to [s]ell [m]ethamphetamine and was sentenced to serve

12

a term of ten (10) years in the custody of the [MDOC] with nine (9) years to be suspended, leaving one (1) year to serve followed by five (5) years post[-]release supervision.

That said Defendant has been convicted in the Circuit Court of Madison County, Mississippi[,] in Cause No. 2010-0700, for possession of methamphetamine and was sentenced to serve a term of eight (8) years with six (6) years to be suspended, leaving two years to serve followed by five (5) years supervised probation.

As stated, the case went to trial on October 28, 2013.

¶25. In *Gowdy*, the Mississippi Supreme Court held that the trial court erred in "allowing the State to amend the indictment after [the defendant had been] convicted[.]" *Gowdy*, 56 So. 3d at 546 (¶24). *Gowdy* is distinguishable from this case because, here, the circuit court granted the amendment more than two months before this case went to trial. Additionally, Vaughn has offered no evidence to support his argument that the amendment prejudiced his defense, as the motion to amend clearly set forth Vaughn's prior convictions, and he was afforded an adequate opportunity to prepare. Vaughn has also failed to establish that he refused plea offers based upon his belief that the State would not charge him as a habitual offender. Therefore, this issue is without merit, and we affirm.

¶26. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT OF CONVICTION OF THE SALE OF METHAMPHETAMINE AND SENTENCE AS A HABITUAL OFFENDER AND A SUBSEQUENT DRUG OFFENDER OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A $10,000 FINE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.**

13

**LEE, C.J., GRIFFIS, P.J., ISHEE, CARLTON, MAXWELL, FAIR AND WILSON, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**