# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00859-COA

**CASEY BIRKLEY A/K/A CASEY ANTONIO BIRKLEY A/K/A CASEY A. BIRKLEY**          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/11/2015 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF ARMED ROBBERY AND SENTENCED AS A HABITUAL OFFENDER TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION |
| DISPOSITION: | REVERSED AND REMANDED - 11/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. Casey Birkley appeals his armed-robbery conviction and sentence as a habitual offender of life without parole in the custody of the Mississippi Department of Corrections (MDOC), claiming that the admission of evidence of prior convictions and testimonial hearsay by a non-witness constitutes reversible error. Finding merit to both issues raised by

Birkley, we reverse the judgment and remand for a new trial consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2.     On the night of January 20, 2014, Erica Wallace was working at an Exxon gas station in Greenville, Mississippi. She was preparing to close the store when a man wearing dark clothes and a "skull cap" walked in and asked for cigars. She recalled the same man was at the store earlier, remembering he had stared intently at her. After retrieving the cigars, she turned around at the register to find that he had a gun pointed at her face. She complied with the robber's demand to open the register, from which he took approximately $46.

¶3.     Birkley was later established as the suspect when a Greenville police officer, Desmond Washington, identified him from a still image of the store's surveillance video. Officer Washington told investigating officers he had stopped Birkley the night before for a warrant check. Wallace also identified Birkley from a photographic lineup as the man who committed the store robbery.

¶4.     On May 5, 2015, Birkley was convicted by a Washington County Circuit Court jury of armed robbery. He was sentenced to life imprisonment, as a habitual offender under Mississippi Code Annotated section 99-19-83 (Rev. 2014), in the custody of the MDOC. Birkley filed a motion for a judgment notwithstanding the verdict, which the trial court denied.

¶5.     He now appeals, alleging the trial court erred in admitting evidence of his prior convictions, and allowing hearsay testimony in violation of the Confrontation Clause of the

2

Sixth Amendment. Upon review, we find: (1) that the evidence of Birkley's prior convictions was inadmissible under the facts of the case, and (2) that certain hearsay testimony regarding the photo identification of Birkley by Officer Washington, who did not testify at trial, was improper and constituted a violation of Birkley's Sixth Amendment right to confront and cross-examine witnesses.[1]

¶6.     Accordingly, we reverse the judgment of the circuit court and remand for a new trial consistent with this opinion.

## DISCUSSION

**I.     Whether the trial court erred in admitting evidence of Birkley's prior armed-robbery convictions**.

¶7.     Prior to trial, Birkley filed a motion in limine to exclude evidence of his two prior armed-robbery convictions. Defense counsel argued this evidence was prejudicial, as it attempted to prove Birkley had "certain character traits and that he acted in conformity therewith." The State contended that because Birkley had robbed a gas station in the "same manner" that this robbery was committed, the evidence of the prior convictions showed a "consistent pattern." The trial court denied the motion in limine, explaining: "[I]t seems to me under [Mississippi Rule of Evidence] 404(b), this fits under the [modus operandi,] showing his plan and preparation. . . . I think there is case law that says in a case like this, it's

---

[1] "The Sixth Amendment prohibits [the] 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination.'" *Hull v. State*, 174 So. 3d 887, 896 (¶25) (Miss. Ct. App. 2015) (quoting *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004)).

not unduly prejudicial and it does come in." Then, during in-chamber proceedings at the start of trial, the trial judge asked the following:

> [J]ust for clarification, does the State intend to introduce the convictions or just the similarity on how the crimes occurred or allegedly occurred? You want the conviction in or how it occurred?
>
> . . . .
>
> What I am getting at is I think you can get the particulars of the prior without getting into whether or not he was convicted or not. . . . I think it comes in under 404(b) and then clearly the probative value outweighs any kind of prejudicial effect. It's clearly probative.
>
> . . . .
>
> Well, it is not a question of showing bad character. That's not what they are trying to do. . . . It's not like, you know, that he is a bad person therefore he is more likely to do "X." That's what's prohibited. You can't do that. But you can say plan, intent, lack of mistake, all those things listed in 404(b) and looks to me like it fits and passes through [Mississippi Rule of Evidence] 403.

The defense renewed its objection.

¶8.     Birkley claims that the trial court should have granted his motion in limine, as the evidence of his prior convictions was prejudicial and too remote to prove any plan or motive. He also asserts that the scheme used to rob the gas station was "common and typical," and "not so unusual or distinctive such that they may sensibly be considered as the handiwork of . . . Birkley[.]"[2]  Evidence of prior bad acts may be admissible if its probative value

---

[2] As the State notes, Birkley did testify on direct examination that he had his facial scar "since before *[he] went to prison* in 2003." (Emphasis added). And on cross-examination, he replied: "[The police] knew I had a past history, record of armed robbery." However, we find this does not constitute a waiver of this issue. *See Wright v. Royal Carpet*

4

outweighs its prejudicial effect and if it is offered "for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M.R.E. 404(b).

> The question on review is not whether [our appellate c]ourt[s] would have admitted the evidence, but whether the trial court abused its discretion in doing so, for the exclusion of prejudicial evidence is permissive; that is, if a trial court determines that the prejudicial effect of evidence substantially outweighs its probative value, it is not obligated to exclude the evidence, but may do so at its discretion.

*Stone v. State*, 94 So. 3d 1078, 1085 (¶20) (Miss. 2012) (internal quotations and emphasis removed) (quoting *Ross v. State,* 954 So. 2d 968, 993 (¶44) (Miss. 2007)). An erroneous admission of evidence will not be reversed on appeal "unless the error adversely affects a substantial right of the party." *Vaughn v. State*, 189 So. 3d 650, 652 (¶9) (Miss. Ct. App. 2016) (quoting *Pryer v. State*, 958 So. 2d 818, 820-21 (¶5) (Miss. Ct. App. 2007)).

¶9.     Officer Eric Sutton, the investigator for the 2003 robberies, testified that in both robberies, which occurred within days of one another, two "black males" with caps on their heads asked for cigarettes and pulled a gun on the cashier when the cashier turned. One eyewitness identified Birkley, and a surveillance video showed the other male refer to his accomplice as "Casey." Although the prosecution never mentioned that Birkley was convicted, it did solicit testimony from Officer Sutton that Birkley was charged with both

---

*Servs.*, 29 So. 3d 109, 118 (¶30) (Miss. Ct. App. 2010) (Maxwell, J., concurring in part and in result) (reasoning that "in light of [an] adverse ruling on [a] motion in limine," counsel is permitted to adjust "his trial strategy to take the sting out of what he perceive[s] to be damning evidence").

5

robberies. During closing arguments, the State reiterated:

> What did Officer Sutton tell you? He goes to the store, asks for a tobacco product. He wants Newports. That's on the 23rd. She turns around, gets the Newports, here's the gun. October 26th, he goes to another Double Quick, asks for Newports, tobacco products. Turns around, what do you have again, a gun? And guess what, on January 20th, 2014, he decided to go to 711 Reed Road, this Exxon[]. . . . But instead of him just coming in to purchase something like he did earlier that day at 9:00 o'clock when she saw him and leaving, what does he do? He comes in because he has already scoped the scene out at 9:00 o'clock. He's been paying attention. . . . [J]ust as the 23rd of October, just as the 26th of October, those other two robberies, he asks for instead of Newports, this time he asks for two Black & Milds. She turns around, and she comes back, there's the gun to her face.
>
> This is what he does. This is his scheme. This is what he does. This is nothing new for this defendant.

¶10. "[E]vidence of prior crimes or offenses is not admissible 'merely because it is similar, but only if it bears such a high degree of similarity as to mark it as the handiwork of the accused." *Burrell v. State*, 727 So. 2d 761, 768 (¶19) (Miss. Ct. App. 1998) (quoting *United States v. Silva,* 580 F.2d 144 (5th Cir. 1978)). Although the Mississippi Supreme Court has not directly addressed the issue of "signature" crimes, this Court has commented that if the similarities of a crime are "'generic,' . . . they will not constitute a 'signature crime.'" *Lenard v. State*, 77 So. 3d 530, 541 (¶46) (Miss. Ct. App. 2011) (Maxwell, J., concurring in part and in result) (quoting *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008)). In *Segundo*, the Court of Criminal Appeals of Texas reasoned:

> One of the main rationales for admitting extraneous-offense evidence is to prove the identity of the offender. Here, the theory of relevancy is usually that of modus operandi in which the pattern and characteristics of the charged crime and the uncharged misconduct are so distinctively similar that they

6

constitute a "signature." Usually, it is the accretion of small, sometimes individually insignificant, details that marks each crime as the handiwork or modus operandi of a single individual. No rigid rules dictate what constitutes sufficient similarities; rather, the common characteristics may be proximity in time and place, mode of commission of the crimes, the person's dress, or any other elements which mark both crimes as having been committed by the same person. But if the similarities are "generic," i.e., typical to this type of crime, they will not constitute a "signature" crime.

*Segundo*, 270 S.W.3d at 88.

¶11. The Tennessee Supreme Court has further observed that "[a]s to 'signature' crimes, we have described such offenses as involving a modus operandi so unique and distinctive, and involving 'such unusual particularities,' that reasonable persons would conclude that the means of committing the crimes 'would not likely be employed by different persons.'" *State v. Garrett*, 331 S.W.3d 392, 404 (Tenn. 2011) (citation omitted).

> Although the evidence of the other crime need not be identical to the evidence of the charged offense, *for other crime evidence to have probative value it must bear a sufficient connection to the issue of identity* so as to establish the defendant's commission of "signature crimes." . . . The test, therefore, is not whether the evidence demonstrates that the defendant committed both crimes, but *whether the defendant used a peculiar and distinctive method in committing the crimes*.

*State v. Jones*, 450 S.W.3d 866, 895 (Tenn. 2014) (internal citations omitted and emphasis added).

¶12. Under the circumstances of this case, we find the evidence of the prior convictions did not have a sufficient connection to have probative value on the issue of identity, and Birkley's prior armed robberies were not so "peculiar and distinctive" to establish that he had committed a "signature" crime. As Birkley notes, "[g]as station robberies are commonly

accomplished by requesting or purchasing a small item" from behind the counter "as a diversion to brandish a weapon and/or to cause the attendant to open the register." In *Smith v. State*, 90 So. 3d 122, 125 (¶2) (Miss. Ct. App. 2012), a "gunman approached the store clerk and asked her for some Black & Mild cigars. When the man handed [the clerk] a five-dollar bill, she opened the cash register. The gunman then demanded, 'Give me all the money,' and brandished a firearm he had hidden beneath his shirt." *See also Rash v. State*, 840 So. 2d 774, 775 (¶3) (Miss. Ct. App. 2003) (After the defendant asked the convenience-store clerk for "three packages of Newport cigarettes," the clerk turned to find the defendant "pointing a silver pistol at her," whereupon the defendant took "some fives and some ones" from the cash register.); *Grihim v. State*, 760 So. 2d 865, 866 (¶2) (Miss. Ct. App. 2000) (After the assailant "walked in, approached the counter[,] and requested a pack of cigarettes, . . . [he] produced a pistol, pointed it at [the store clerk,] and ordered her to give him all of the cash in the register."). Based upon their prior activities, Antonio Smith, Floyd Rash, or Tully Grihim could just as easily have been the perpetrator of the robbery in the present case. The trial court abused its discretion in admitting Birkley's prior armed-robbery convictions to prove a common plan or modus operandi.

¶13. "The reason for [Rule 404(b)] is to prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged." *White v. State*, 842 So. 2d 565, 573 (¶24) (Miss. 2003) (citations omitted). The admission of Birkley's prior armed robberies under Rule 404(b) was more prejudicial than

8

probative and constitutes reversible error, and we remand for a new trial consistent with this opinion. Birkley's argument that the evidence of the prior convictions was too remote to be probative is rendered moot by our holding.

> **II.    Whether testimony regarding the photo identification of Birkley by a witness who did not testify was improper hearsay and violated Birkley's rights under the Sixth Amendment Confrontation Clause.**

¶14.    Although we have found reversible error, we find it proper to address Birkley's remaining claim concerning hearsay testimony, as it may affect the admission of evidence on remand. Birkley contends that testimony by the two investigating officers, Officer Jeremy Arendale and Investigator Steven O'Neal, regarding Officer Washington's identification of Birkley from the photo, was inadmissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c).

### *A.    Officer Arendale's Testimony*

¶15.    At the pretrial motion hearing, Officer Arendale stated that Officer Washington identified Birkley from the surveillance-video image, since the perpetrator did not cover his face.[3] The defense did not object to this statement. Although the State named Officer Washington as a potential witness, he was not called at trial. Subsequently, during direct examination at trial, Officer Arendale stated:

> [W]e stopped a patrol officer by the name of Desmond Washington with the

---

[3] The surveillance video was later shown to the jury.

9

Greenville Police Department, and I showed him the photo of the offender. And at that time, he advised me that the guy in the video on the phone, he had stopped the night before at the intersection of Sunflower and Delta Street. . . . At that time, I asked him did he know his name. He advised he did. So at that time, I went to the police department because they can do warrant checks, write the names down for the person they're seeking the warrants on. Once I looked at the file and it showed Casey Birkley at Nelson and Sunflower had the warrant checked on him by the desk in Washington. At that time, [we] did a background check on him and developed a suspect.

Again, the defense made no objection to this testimony. Generally, "[t]he failure to object to testimony at trial 'waives any assignment of error on appeal.'" *Ross v. State*, 16 So. 3d 47, 57 (¶21) (Miss. Ct. App. 2009) (quoting *Johnson v. State,* 477 So. 2d 196, 214 (Miss. 1985)). Therefore, Birkley "must rely on the plain error rule to raise th[is] assignment [of error] on appeal." *Foster v. State,* 639 So. 2d 1263, 1289 (Miss. 1994) (citing *Gray v. State,* 487 So. 2d 1304, 1312 (Miss. 1986)).

¶16. We find Officer Arendale's testimony did not constitute hearsay. "Statements do not constitute hearsay when admitted to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *Fullilove v. State*, 101 So. 3d 669, 675 (¶20) (Miss. Ct. App. 2012) (citing *Smith v. State,* 984 So. 2d 295, 300 (¶8) (Miss. Ct. App. 2007)). "Out-of-court statements made to police during the course of their investigations are admissible." *Id.* In *Fullilove*, we concluded the admission of testimony by the investigating officer – that another officer had identified three men on a store surveillance tape – was not hearsay, as it merely showed the investigator's reasons for interrogating the defendant. *Id.* Similarly, Officer Washington was referenced by Officer Arendale merely as a source of

10

information to show how law enforcement came to interview Birkley as a suspect; Officer Arendale's testimony was not given for the purpose of proving the truth of Officer Washington's assertion. Therefore, we find the testimony by Officer Arendale did not constitute plain error.

### B. Investigator O'Neal's Testimony

¶17. Defense counsel did object on the basis of hearsay during Investigator O'Neal's testimony. When asked how he had developed a suspect during the investigation, Investigator O'Neal testified on direct examination: "As we were in the area, we came across a former Greenville police officer, and we just said, 'Hey, can you look at this on the phone, see if you can identify this guy [from the surveillance video]?' And, of course, he did. Officer Washington, he said he actually stopped . . . ." It was at this point defense counsel objected, and the State said it would rephrase the question. But the State then asked:

> Q.  Don't tell me what he said, but once you obtained the information of the fact that *he identified Casey Birkley*, what did you do?

> A.  Okay, *after he was identified by the still shot on the phone*, I passed it along to my supervisor.

(Emphasis added). The State's rephrased question was worse, rather than better. Rather than asking what Officer Washington said, the prosecution included the answer in a leading question. Both the question and Investigator O'Neal's answer exceeded merely testifying as to the course of the investigation and constituted improper hearsay. The question and answer were given for the purpose of proving the truth of the matter asserted – that Birkley

11

was the armed robber in the surveillance video from the store. *See* M.R.E. 801(c). This was reinforced during the State's closing arguments:

> We know exactly who committed this crime. . . . [Officer] Arendale, he knew exactly who committed this crime. [Investigator] O'Neal reviewing the video, he knew exactly who committed this crime. *Other officers reviewing the video, they knew exactly who committed this crime.* This is not a case of mistaken identity.

(Emphasis added). The State further noted: "[O]ne officer that saw a screen shot that had just stopped him the night before [said], yeah, I saw him the other night." We recognize that the prosecution's closing argument is not evidence. *Henton v. State*, 752 So. 2d 406, 409 (¶11) (Miss. 1999). However, the prosecution's comments demonstrate that the State was attempting to, as Birkley asserts, "buttress Wallace's identification by providing evidence of an additional identification by [Officer] Washington."

¶18. Although defense counsel did not renew her objection or move for a mistrial, we find the comments regarding Officer Washington's identification of Birkley, during Investigator O'Neal's testimony, constituted plain error. We acknowledge this improper hearsay may be considered harmless error, since Birkley was also identified by Wallace and the surveillance video was admitted into evidence. Here, however, identity was the crucial issue, and the State clearly used Officer Washington's identification hearsay statement as proof of Birkley's guilt. As we have already found reversible error concerning the admission of Birkley's prior convictions, we find it unnecessary to make the determination as to whether this issue, in and of itself, would be sufficient for reversal.

*C.      Sixth Amendment Confrontation Clause*

¶19.    Birkley failed to make a contemporaneous Sixth Amendment objection to the admission of Officer Washington's testimony.  Having found the evidence improperly admitted, we find it unnecessary to address the constitutional issue under the plain-error doctrine.

¶20.     We reverse and remand for a new trial consistent with our findings.

¶21.    **THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY**.

        **LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, FAIR AND GREENLEE, JJ., CONCUR.  WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.  CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**