# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00197-COA

**CLYDE FITZGERALD BLOCTON A/K/A**          **APPELLANT**
**CLYDE F. BLOCTON**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/28/2021 |
| TRIAL JUDGE: | HON. CHRISTOPHER LOUIS SCHMIDT |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CANDICE LEIGH RUCKER |
| DISTRICT ATTORNEY: | W. CROSBY PARKER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/31/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., GREENLEE AND EMFINGER, JJ.

### GREENLEE, J., FOR THE COURT:

¶1. Following a jury trial in the Harrison County Circuit Court, Clyde Blocton was convicted of the sexual battery of a five-year-old girl, K.L.[1] The circuit court sentenced him to serve twenty-five years in the custody of the Mississippi Department of Corrections. On appeal, Blocton claims that the circuit court erred by (1) admitting testimony that was used to bolster the testimony of K.L. under the tender years exception and (2) admitting irrelevant

---

[1] Initials are used to protect the identity of the minor children.

and prejudicial evidence that denied him a fair trial. After review, we find no reversible error and affirm Blocton's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     Initially, five-year-old K.L. lived with her mother, Emma; thirty-year-old stepfather, Blocton; two brothers; and her grandmother in a house located in Gulfport, Mississippi. While living in Gulfport, Blocton began to sexually abuse K.L. According to K.L. when she was five and six years old, her stepfather "did something very, very bad" to her. K.L. explained that on multiple occasions Blocton had put "his front private[] part in [her] mouth" and told her to "suck it." She also stated that on one occasion Blocton urinated in her mouth. The abuse occurred while everyone else was asleep. Eventually, K.L. disclosed to her grandmother that Blocton had been sexually abusing her.

¶3.     After K.L.'s initial disclosure, Megan Morvant, a Gulfport Police Department Detective, was assigned to investigate K.L.'s allegations. On July 11, 2018, Detective Morvant arranged a forensic interview for K.L. with Daniel Dooley, a forensic interviewer with the Gulfport Child Advocacy Clinic. Based on his interview with K.L. and his training, Dooley determined that K.L.'s interview "was consistent with a sexual abuse disclosure."

¶4.     On October 23, 2018, Blocton was arrested on a warrant charging him with sexual battery. He was released on bond on November 9, 2018, under the condition that he have no contact with K.L. or her family. Shortly after K.L.'s disclosure, her mother moved the family to Louisiana. On January 29, 2019, Ashley Meyers, a child protection investigator with the Louisiana's Department of Children and Family Services, received a report expressing

2

"concerns for a lack of supervision and inadequate shelter." There was also concern regarding the possibility that K.L. was still residing with Blocton. The following day, Investigator Meyers arrived at the house to conduct an investigation, which revealed that the family was residing in a neighbor's ten-by-ten shed. The shed was small, had no running water, two beds, and a microwave. According to Investigator Meyers, two people could not comfortably stand in the shed for a conversation. Blocton was present when Investigator Meyers arrived at the home. Investigator Meyers testified that Blocton acknowledged the bond restriction but insisted on maintaining the family unit. Meyers removed K.L. from her mother's custody and placed her in foster care.[2] On January 31, 2019, K.L. was placed with her current foster mother, Megan Sharp. A few days into her placement, K.L. spoke with Sharp regarding the abuse. According to Sharp, K.L. stated that "her stepfather [put], and she called it a d**k, in her mouth at certain times, either in a bedroom, on a couch, or in the bathroom."

¶5.     On June 10, 2019, a Harrison County grand jury indicted Blocton on one count of sexual battery under Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014). When Blocton failed to appear at his arraignment on July 8, 2019, the circuit court entered a judgment nisi. Blocton was remanded into custody shortly thereafter. The State promptly filed a motion to revoke Blocton's bail, and the circuit court granted the motion on July 22, 2019. His bond was revoked on July 30, 2019. Blocton entered a plea of not guilty in August 2019, and the case proceeded to trial on January 19, 2021, after several continuances.

---

[2] K.L.'s two brothers were also removed from their mother's custody and placed in foster care.

¶6.	Before trial, the circuit judge held a separate hearing outside the presence of the jury to determine the admissibility of K.L.'s disclosures to Dooley (the forensic interviewer) and Sharp (her foster parent) and to determine whether K.L. was competent to testify at trial. Dooley and Sharp testified about K.L.'s disclosures. The circuit judge found K.L. competent to testify at trial but reserved ruling on the admissibility of K.L.'s disclosures to the others until K.L. testified.

¶7.	At trial, the State called K.L. as its first witness. K.L. spoke about several instances of sexual abuse by Blocton that had occurred when she was five and six years old. K.L. explained how Blocton would wake her up and place his penis in her mouth. She explained how he then directed her to suck it.

¶8.	Shortly after K.L.'s testimony in front of the jury, the circuit judge conducted a hearing outside the presence of the jury to rule on whether Dooley and Sharp could testify about K.L.'s disclosures to them. The circuit judge specifically addressed each reliability factor under Mississippi Rule of Evidence 803(25) on the record and ruled that K.L.'s disclosures had substantial indicia of reliability and were, therefore, admissible under the tender-years hearsay exception.

¶9.	After the circuit judge's ruling, Sharp testified about K.L.'s disclosures to her and Dooley testified regarding K.L.'s forensic interview. After a video recording of the forensic interview was admitted into evidence and played for the jury, Dooley testified that K.L.'s disclosures during the forensic interview were consistent with a child that had been sexually abused.

4

¶10. Subsequently, Detective Morvant testified that in June 2018 she was assigned to investigate a sexual battery claim of five-year-old K.L. She testified about the victim, the perpetrator's identity, and the location of the incidents. Similar to Sharp, Detective Morvant explained that K.L. disclosed that her stepfather, Blocton, had put his penis in her mouth. She further stated that K.L. never alleged that anyone other than Blocton had sexually abused her.

¶11. Blocton testified and denied all of K.L.'s accusations. Blocton claimed that statements made in court regarding K.L. having no relationship with her biological father were false. He explained that he had personally taken K.L. to her father's home to play with her siblings. However, on cross-examination, Blocton acknowledged that after the family moved to Gulfport, K.L. had no contact with her biological father. Blocton denied ever waking K.L. when he returned home from work.

¶12. Blocton was convicted of sexual battery and was sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections. Blocton then filed an unsuccessful motion for a new trial or, in the alternative, judgment notwithstanding the verdict.

¶13. Blocton now appeals and argues that the circuit court erred by (1) admitting testimony that was used to bolster the testimony of K.L.'s testimony under the tender years exception and (2) by admitting irrelevant and prejudicial evidence, which denied him a fair trial.

**STANDARD OF REVIEW**

¶14. We review the admission of hearsay evidence for abuse of discretion. *Garcia-Lebron v. State*, 323 So. 3d 1159, 1165 (¶21) (Miss. Ct. App. 2021). "This Court will affirm the

5

[circuit] court's ruling unless it can safely say that the [circuit] abused its discretion in allowing or disallowing evidence to the prejudice of the accused." *Pitts v. State*, 291 So. 3d 751, 755 (¶16) (Miss. 2020) (quoting *Tubbs v. State*, 185 So. 3d 363, 367 (¶9) (Miss. 2016)).

## DISCUSSION

### I.     Whether the State impermissibly bolstered K.L's testimony with the testimony of other witnesses.

¶15.    Blocton argues that the circuit judge abused his discretion by permitting K.L.'s foster mother, Megan Sharp; the forensic interviewer, Dan Dooley; and law enforcement detective, Megan Morvant, to testify about what K.L. disclosed.

¶16.    "A fundamental principle of evidentiary law provides that hearsay is 'incompetent evidence' unless it falls under one of the exceptions to the rule against hearsay." *Pitts*, 291 So. 3d at 755 (¶20) (citing *Smith v. State*, 724 So. 2d 280, 315 (Miss. 1998)). Mississippi Rule of Evidence 803(25) is an exception to the hearsay rule. Rule 803(25), also known as the tender years exception, provides that

> [a] statement by a child of tender years describing any act of sexual contact with or by another is admissible if:
>
>> (A)     the court—after a hearing outside the jury's presence—determines that the statement's time, content, and circumstances provide substantial indicia of reliability; and
>
>> (B) the child either:
>
>>> (i) testifies; or
>
>>> (ii) is unavailable as a witness, and other evidence corroborates the act.

M.R.E. 803(25). There is no dispute, here, that K.L. was a child of tender years. *See Veasley*

6

*v. State*, 735 So. 2d 432, 436 (¶16) (Miss. 1999) ("[T]here is a rebuttable presumption that a child under the age of twelve is of tender years.").

¶17.    The commentary to Rule 803(25) provides a list of factors that a circuit judge should consider when determining reliability of the child's hearsay statement including:

> (1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

M.R.E. 803(25) advisory committee note. "The unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." *Pitts*, 291 So. 3d at 756 (¶21) (internal quotation marks omitted) (quoting *Rogers v. State*, 95 So. 3d 623, 628) (¶14) (Miss. 2012)). "A [circuit] court's determination of substantial indicia of reliability should be made on the record." *Id*.

¶18.    Here, as required by Rule 803(25), the circuit judge conducted a hearing outside the jury's presence to determine whether Sharp, Dooley, and Detective Morvant could testify about K.L.'s disclosures. The circuit judge addressed each reliability factor in detail on the record, applied appropriate weight to each and made an overall finding that K.L.'s out-of-court disclosures had substantial indicia of reliability. On appeal, Blocton contends that testimony from Sharp, Dooley, and Detective Morvant improperly bolstered K.L's testimony.

¶19.    Because there was no objection to any alleged bolstering from Sharp, Dooley, or

7

Detective Morvant, the argument is procedurally barred. *See Chase v. State*, 645 So. 2d 829, 855 (Miss. 1994). Procedural bar notwithstanding, we will address Blocton's assertions.

### A. Sharp's Testimony

¶20. Sharp testified that K.L. disclosed the abuse to her while they had a conversation in Sharp's room. Sharp denied prompting K.L. to speak with her regarding the abuse and she explained that K.L. had only been with her a few days when the disclosure occurred. On cross-examination, Sharp testified that K.L. struggled in school and had days where she was affected by what occurred.

¶21. Blocton takes issue with Sharp's use of hearsay under the Rule 803(25) tender years exception. As discussed above, the circuit judge followed Rule 803(25) when he held a hearing outside the presence of the jury, at which both Sharp and Dooley testified. Although the circuit court expressed concern that the timing of the disclosure to Sharp was "too attenuated," after considering all the factors as a whole and the circumstances around K.L.'s statements, he found that Sharp appeared to be a credible witness, had not suggested or prompted K.L., and that K.L. statements were made spontaneously. Further, Sharp's testimony did not just reiterate K.L.'s disclosure, it provided context and information through the eyes of a foster parent including how it affected K.L.'s behavior and schoolwork.

### B. Detective Morvant's Testimony

¶22. Blocton argues that Detective Morvant's testimony "contained assumptions that sexual battery had in fact occurred, on the dates specified, at the location alleged and [committed] by [him]." He specifically claims that Detective Morvant could have only

learned of the information through hearsay, and her testifying to them as fact was "improper hearsay premised on hearsay."

¶23. "The admissibility of law enforcement's testimony that refers to victims' statements depends on whether it is offered to prove a fact (testimonial hearsay) or whether it is offered merely to show why the officer acted as he did (non[-]testimonial hearsay)." *Jones v. State*, 287 So. 3d 995, 1006 (¶40) (Miss. Ct. App. 2019). This Court held that statements do not constitute hearsay when admitted to "explain[] an officer's course of investigation or motivation for the next investigatory step by that officer." *Id*. (quoting *Birkley v. State*, 203 So. 3d 689, 696 (¶16) (Miss. Ct. App. 2016)); *see also Morment v. State*, 315 So. 3d 475, 481 (¶19) (Miss. Ct. App. 2020).

¶24. Detective Morvant testified that in June 2018 she was assigned to investigate a sexual battery claim of five-year-old K.L. She testified about the victim, perpetrator's identity, and the location of the incidents. Similar to Sharp, Detective Morvant explained that K.L. disclosed that her stepfather Blocton had put his penis in her mouth. She further stated that K.L. never alleged that anyone other than Blocton had sexually abused her.

¶25. Detective Morvant did not assume that sexual abuse occurred. As a part of her investigation, Detective Morvant referred K.L. to the forensic interviewer, Daniel Dooley. Her testimony was not offered to bolster K.L.'s testimony. Rather, her testimony was offered to show what she learned from her investigation and what she did as a result of it. *See Bailey v. State*, 956 So. 2d 1016, 1032 (¶59) (Miss. Ct. App. 2007); *see also Morment*, 315 So. 3d at 481 (¶21). Indeed, based on her investigation and K.L.'s forensic interview, Blocton was

9

arrested and later indicted.

### C. Dooley's Testimony

¶26. Dooley, a forensic interviewer with the Gulfport Child Advocacy Center, interviewed K.L. when she was six years old. According to Dooley, K.L. described situations where her stepfather would put his penis in her mouth. Dooley testified that on the recording of the interview, K.L. referred to a penis as "gus" or "guts." However, when given an anatomical drawing, she identified what a penis was. Dooley also testified that K.L. described a time where there was "candy or something put on his penis." K.L. also mentioned Blocton urinating in her mouth and a child-like reference to semen. Based on his training as a forensic interviewer, Dooley stated that K.L.'s statements were consistent with a sexual-abuse disclosure.

¶27. Prior to Dooley's testimony regarding K.L.'s interview, the State questioned Dooley concerning his experience as a forensic interviewer. Blocton claims that testimony about Dooley's experience bolstered K.L.'s testimony. He specifically takes issue with Dooley's statement that he had conducted "more than 6,000 forensic interviews" with other child sex-abuse victims.

¶28. Mississippi Rule of Evidence 702 places the circuit judge "as gatekeeper on questions of admissibility of expert testimony." *McCammon v. State*, 299 So. 3d 873, 883 (¶25) (Miss. Ct. App. 2020) (citing *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 40 (¶25) (Miss. 2003)). "The proponent of expert testimony must show by a preponderance of the evidence that the expert is qualified, that he possesses scientific knowledge that will assist the jury, and

10

that his testimony is based on sufficient facts and data and reliable principles and methods, reliably applied to the facts of the case." *Id*. (quoting *Brown v. Prof'l Bldg. Servs. Inc.*, 284 So. 3d 754, 761-62 (¶30) (Miss. Ct. App. 2017)). "To be relevant, the evidence must 'fit' the case by being 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Id*. (quoting *Corrothers v. State*, 148 So. 3d 278, 294 (¶24) (Miss. 2014)). Additionally, "[t]he scope of permissible expert testimony under [Mississippi] Rule [of Evidence] 702 includes an expert's opinion that the alleged victim's characteristics are consistent with those of children who have been sexually abused." *Young v. State*, 106 So. 3d 811, 818 (¶14) (Miss. Ct. App. 2011).

¶29.    The State tendered Dooley as an expert in forensic interviewing and the questions previously asked by the State were to establish Dooley's credibility and qualifications as required under Rule 702. "[T]he admission of testimony is left to the sound discretion of the circuit court, and we will only find error where the circuit court abuses that discretion." *Mason v. State*, 203 So. 3d 732, 741 (¶43) (citing *Bishop v. State*, 982 So. 2d 371, 375 (¶15) (Miss. 2008)). Finding no abuse of discretion, we affirm the circuit court's ruling.

¶30.    K.L. testified at trial and was subjected to cross-examination by the defense. K.L.'s statements to Sharp, Dooley, and Detective Morvant were all consistent with her initial disclosure despite being disclosed at different times throughout the ongoing court proceedings. We find that the circuit court acted within its discretion by concluding that K.L.'s out-of-court statements were supported by sufficient indicia of reliability. Accordingly this issue is without merit.

11

## II. Whether the admission of Investigator Meyers' testimony violated Blocton's right to a fair trial.

¶31. Blocton argues that the admission of Investigator Meyers' testimony resulted in him not receiving a fair trial. He argued that her testimony regarding K.L.'s placement with a foster family violated Mississippi Rules of Evidence 404(b) and 403 because it informed the jury that Blocton had committed child abuse. Blocton argues that this Court should consider this issue under the plain-error doctrine. In the alternative, Blocton argues that his defense attorney's failure to object is equivalent to ineffective assistance of counsel.

¶32. Regarding the admissibility of evidence, "decisions are left to the sound discretion of the [circuit] court so long as they are within the boundaries of the Mississippi Rules of Evidence." *Herrington v. State*, 102 So. 3d 1241, 1247 (¶20) (Miss. Ct. App. 2012) (internal quotations marks omitted) (quoting *Moss v. State*, 977 So. 2d 1201, 1207 (¶4) (Miss. Ct. App. 2007)). The circuit court's decision will not be found in error unless the circuit court abused its discretion. *Id*. In Mississippi, however, it is well-established law that "[t]he failure to make a timely objection to an issue at trial waives consideration of the issue on appeal." *Id*. (quoting *Johnson v. State*, 75 So. 3d 63, 67 (¶10) (Miss. Ct. App. 2011)). "The [circuit] court will not be held in error on a matter that was never presented for its consideration." *Id*.

¶33. Although no objection was made to Investigator Meyers' testimony at trial, we may still review the circuit court's decision under the plain-error doctrine. *See Mitchell v. State*, 788 So. 2d 853, 855 (¶8) (Miss. Ct. App. 2001). "Under the plain-error doctrine, we can recognize obvious error which was not properly raised by the defendant . . . and which affects a defendant's 'fundamental, substantive right.'" *Conners v. State*, 92 So. 3d 676, 682 (¶15)

12

(Miss. 2012) (quoting *Smith v. State*, 986 So. 2d 290, 294 (¶10) (Miss. 2008)). "For the plain-error to apply, there must have been an error that resulted in a manifest miscarriage of justice or "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Brown v. State*, 995 So. 2d 698, 703 (¶21) (Miss. 2008)).

¶34.    After a review of the record, we find that there was no "violation of a legal rule that could be considered plain, clear, or obvious and was prejudicial on the result of the trial." *Blanchard v. State*, 55 So. 3d 1074, 1077 (¶16) (Miss. 2011).

¶35.    Blocton also asserts that in the alternative, he received ineffective assistance counsel due to his attorney's failure to object to Investigator Meyers' testimony. Generally, "claims of ineffective assistance of counsel should be raised in a motion for post-conviction relief, not on direct appeal." *Battle v. State*, 269 So. 3d 325, 330 (¶19) (Miss. Ct. App. 2018) (citing *Pinter v. State*, 221 So. 3d 378, 386 (¶17) (Miss. Ct. App. 2017)); *see also Cork v. State*, 329 So. 3d 1183, 1191-92 (¶31) (Miss. 2021) ("[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings."). We have previously stated:

> It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal because there is usually insufficient evidence within the record to evaluate the claim. Because an appellate court is limited to the trial record on direct appeal, issues of ineffective assistance of counsel are more appropriate in a motion for post-conviction relief. We may address such claims on direct appeal only if the issues are based on facts fully apparent from the record. If the record is not sufficient to address the claims on direct appeal, the Court should dismiss the claims without prejudice, preserving the defendant's right to raise the claims later in a properly filed motion for post-conviction relief.

*Id.* (quoting *Johnson v. State*, 191 So. 3d 732, 735-36 (¶13) (Miss. Ct. App. 2015)).

However, the record here does suffice; therefore, we address Blocton's ineffective assistance claim on direct appeal.

¶36.    "[T]o prevail on an ineffective-assistance-of-counsel claim, a defendant must first prove that his counsel was deficient, which requires showing that 'counsel made errors so serious that he or she was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Cork*, 329 So. 3d at 1192 (¶32) (quoting *Chamberlin v. State*, 55 So. 3d 1046, 1050 (¶4) (Miss. 2010)). "Secondly, a defendant must prove that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. (quoting *Chamberlin*, 55 So. 3d at 1050 (¶4) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984))).

¶37.    The Mississippi Supreme Court "strongly presume[s] that counsel's conduct falls within the wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy." *Id*. at (¶33) (citing *Chamberlin*, 55 So. 3d at 1050 (¶4)). Therefore, "defense counsel is presumed competent," and "even where professional error is proven, this Court must determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*.

¶38.    Blocton contends his trial counsel was constitutionally ineffective for failing to object to Investigator Meyers' testimony. He claims that "[f]ailure to protest and object to the prejudicial use of other bad acts" meet both of *Strickland*'s requirements. However, he offers

14

no argument or citation of authority in an effort to demonstrate that his attorney was constitutionally ineffective, as required. *See* M.R.A.P. 28(a)(7). Furthermore, even if Blocton could overcome the presumption that his attorney's decision not to object was reasonable, he has failed to demonstrate prejudice as required in *Strickland*. Blocton's assertion that his trial lawyer rendered constitutionally ineffective assistance fails.

## CONCLUSION

¶39. The circuit court properly considered the indicia-of-reliability factors under Rule 803(25) and acted within its discretion by admitting K.L.'s out-of-court disclosures to others. Further, we note that "'a defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Conners v. State*, 92 So. 3d 676, 688 (¶33) (Miss. 2012) (quoting *Brown v. U.S.*, 411 U.S. 223, 231-32 (1973)). We find no error; therefore, we affirm the circuit court's judgment.

¶40. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**