984 So.2d 295 (2007)
Ronnie SMITH a/k/a Ronnie Edward Smith, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02197-COA.
Court of Appeals of Mississippi.
September 25, 2007.
Rehearing Denied February 19, 2008.
*299 Virginia Lynn Watkins, William R. Labarre, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before KING, C.J., CHANDLER and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. Ronnie Smith was convicted in the Hinds County Circuit Court for the crime of capital murder in the commission of the crime of robbery, in violation of Mississippi Code Annotated Section 97-3-19(2)(e) (Rev.2006). He was sentenced to life in the custody of the Mississippi Department of Corrections without parole. Smith appeals and argues: (1) the trial court erred by permitting inadmissible hearsay, (2) the trial court erred by permitting unfairly prejudicial gruesome photographs, (3) the conviction was against the weight of the evidence, and (4) the detective's testimony about Smith's head movements was in violation of his constitutional right to remain silent. We find no error and affirm.

FACTS
¶ 2. Hampton Ellis's body was found in his kitchen on May 14, 2002, by his niece, Hazel Cannon. Mr. Ellis's pants pockets were found inside out. His bedroom was in disarray and seemed to have been rummaged through.
¶ 3. The autopsy determined that Mr. Ellis had died from stab wounds to his jugular veins. Maggie McMillan, a niece who helped with her uncle's finances, notified Mr. Ellis's credit card companies that Mr. Ellis was dead. One credit card company reported to police that there had been charges on Mr. Ellis's credit card after his death. The cards were used at several places including AutoZone, Wal-Mart, and Cabot Lodge. Police used this information to investigate who had used the cards, which led them to Smith.
¶ 4. Police arrested Smith. While in custody, Smith asked several times why he had been arrested. Police stated that it was in reference to the use of the credit cards. Smith stated, "I didn't kill my uncle," and then the detective testified that he "dropped his head." Smith was later indicted for feloniously murdering Hampton Ellis and feloniously taking or attempting to take his personal property.

DISCUSSION
1. Hearsay Testimony
¶ 5. The well-established standard of review for the admission or suppression of evidence is an abuse of discretion. Miss. Transp. Comm'n v. McLemore, 863 So.2d 31, 34(¶ 4) (Miss. 2003). The decision of the trial court must stand "unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion." Id. Furthermore, when an error is made by the trial court regarding the admission or suppression of evidence, this Court "will not reverse unless the error adversely affects a substantial right of a party." Id.
A. Detective Roberts's Testimony
i. Credit Card Information
¶ 6. Smith contends that the trial court erred when it allowed the testimony of the contents of the credit card statements and argues that the trial court erred by allowing Detective Roberts to testify as to how Detective Campbell used that information to investigate. Smith further argues *300 that the State did not call anyone from the credit card company to authenticate that the information was kept during the ordinary course of business and, therefore, it is inadmissible hearsay. The State argues that the information was within the scope and course of Detective Roberts's investigation and is not hearsay. The State contends that since the testimony is not hearsay, it does not need to fall within the records of regularly conducted activity exception to the hearsay rule.
¶ 7. Detective Roberts testified:
I was contacted by Mrs. Debbie Fox from Discovery Systems. She called me and advised me that the niece had contacted her to go ahead and cancel the cards. At that point she said that these cards had been used actually on that day, and they had flagged them. I then asked her if she would fax me that information. And I contacted Detective Campbell, the lead detective in the case, and g[a]ve him this information.
He did follow-up areas where the card was used going back talking with individuals at those locations.
¶ 8. Rule 801(c) states: "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Statements are not hearsay when they are admitted to explain the officer's course of investigation. Rubenstein v. State, 941 So.2d 735, 764 (¶ 111) (Miss.2006). "[O]ut-of-court statements made to the police during the course of their investigations [are admissible]." Gray v. State, 931 So.2d 627, 631(¶ 14) (Miss.Ct.App.2006) (citing Swindle v. State, 502 So.2d 652, 658 (Miss.1987)).
¶ 9. Detective Roberts's testimony was offered for the purpose of establishing the manner in which the police conducted their investigation and is, therefore, admissible. Detective Roberts's testimony did not go to the content of the credit card report. He merely explained how he received the information and passed it on to Detective Campbell as part of the investigation. In addition, Detective Roberts's testimony that Detective Campbell used the information to question workers where the credit card was used did not go to the substance of what was on the credit card company records, but instead it showed how Detective Campbell proceeded in the investigation. The trial court did not abuse its discretion by allowing Detective Roberts's testimony about the credit card usage reports, since the testimony was offered for the purpose of establishing the steps that the police took during their investigation.
ii. Credit Card Company's Financial Information
¶ 10. Smith argues that the trial court erred by permitting Detective Roberts to testify to the contents of the information from the credit card company and further contends that the court erred by allowing Detective Roberts and Detective McDonald to testify at length to the information on and derived from the faxed information from the credit card company. The credit card statements were marked as two exhibits: S-12 and S-13. The information on the statements marked Exhibit S-12 and Exhibit S-13 both show charges to the Discover card which were faxed from Discovery Systems. The difference is that they are different pages from the credit card statement.

Exhibit S-12
¶ 11. Smith argues that the trial court erred by allowing testimony about Exhibit S-12. He contends that the State failed to show the procedure for the credit card company's compilation of information and that the State did not show who compiled *301 that information; therefore, it did not lay the appropriate foundation.
¶ 12. Exhibit S-12 was marked for identification, but was never admitted into evidence during the testimony of Detective Roberts. It was shown to him and he was asked how the information on the exhibit would have been used. Detective Roberts responded that the exhibit was the faxed information sent to him from Discovery Systems and when asked if he followed up on the information, he responded: "[t]he detective working on the case would have been the one to follow-up on that part of it." The record reveals Smith failed to object to these statements; therefore, the issue is waived.[1]Williams v. State, 684 So.2d 1179, 1203 (Miss.1996) (failure to object waives error).

Exhibit S-13
¶ 13. Exhibit S-13 was admitted into evidence during Detective McDonald's testimony. The exhibit was a printout of the places the Discover card was used and the amount that was used at each location. The trial judge specifically asked Smith whether he had any objection to admitting the credit card statement into evidence. There was no objection[2] and the fax was entered into evidence. Since the record reveals Smith failed to object to these statements, the issue is waived. Id. Had there been an objection, it would have given the trial judge the opportunity to evaluate whether it was an authenticated business record under Mississippi Rule of Evidence 803(6). However, since there was no objection made, this Court must determine whether this constitutes plain error.
¶ 14. A party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal because it is otherwise procedurally barred. Williams v. State, 794 So.2d 181, 187(¶ 23) (Miss.2001). "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." Id. at 187. "Further, [the] Court applies the plain error rule only when it affects a defendant's substantive/fundamental rights." Id. The plain error doctrine has been construed to include anything that "seriously affects the fairness, integrity or public reputation of judicial proceedings." McClain v. State, 929 So.2d 946, 951(¶ 10) (Miss.Ct.App.2005) (citing United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). This Court will review the faxed credit card information and the photo-line up to see if the admission of either constitute plain error.

Faxed Credit Card Information (Exhibit S-12 and Exhibit S-13)
¶ 15. Smith did not object to the information faxed from Discovery Systems when it was introduced into evidence or when the Detective was testifying to the information on the fax. Detective McDonald testified to the amounts and times that the credit card was used. This testimony was not the only testimony placing Smith in these stores at the specific times.
¶ 16. Kevin Wakefield, a friend of Smith's, testified as to driving Smith to AutoZone, Wal-Mart and the Cabot Lodge. In fact, Wakefield stated that he saw Smith use a credit card to purchase *302 car parts for Wakefield's father. Wakefield further testified that he saw Smith use a credit card to purchase a television at Wal-Mart. Wal-Mart also gave a security camera tape to detectives showing both Wakefield and Smith pushing a buggy in Wal-Mart with a television inside. The jury heard much of the same testimony throughout the trial. Detective McDonald's testimony did not prejudice the outcome of the trial and, therefore, the failure to object to this testimony did not rise to the level of plain error.
B. Detective McDonald
i. Photo-line-up
¶ 17. As to a photo-line up that the police took to Cabot Lodge, Detective McDonald testified:
Q: And when you went to Cabot Lodge, were you able to obtain any information as to a general description of the person who used the credit card on that night?
A: Yes, ma'am. After we interviewed Mr. Wakefield and later on got a possible name of a suspect, we showed a photo line-up there and Mr. Smith was picked out of the line-up by the night clerks.
¶ 18. "A defendant cannot complain on appeal of alleged errors invited or induced by himself." Singleton v. State, 518 So.2d 653, 655 (Miss.1988). Smith did not object to this testimony during the course of trial. In addition, during cross-examination of Detective McDonald, Smith opened the door to the testimony by continuing the line of questioning in reference to the photo line-up. The State objected to Smith offering the photo line-up as evidence so Smith withdrew any further questions about the line-up. Detective McDonald's testimony as to the photo-line up does not constitute plain error.
ii. Credit Card Statements
¶ 19. Smith argues that the trial court erred by permitting Detective McDonald's testimony that was derived from the information in the credit card reports. The State argues that the testimony is admissible because it is in the nature of explaining the investigation to the court.
¶ 20. The credit card statement, Exhibit S-13, as stated earlier, was admitted into evidence without objection. Detective McDonald testified to the details of the credit card statement. He read from the in-court monitor the specific places, times, and amounts where the Discover Card was used, without objection from Smith. The only objections during this testimony was to the AutoZone receipt and the Wal-Mart receipt being admitted into evidence without proper foundation.[3] Those objections are discussed later. Since there was no objection to the testimony that Detective McDonald gave during this questioning, the appellant waived error.
iii. Cabot Lodge Manager's Identification
¶ 21. Smith argues that the trial court erred by admitting Detective McDonald's testimony about the Cabot Lodge manager's description of the physical characteristics of the person who used the credit cards to check into the hotel. Smith argues that, by allowing this testimony, the trial court violated his Sixth Amendment right to confront his accuser under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Detective McDonald testified:
First we went to the Cabot Lodge and talked with one of the managers. . . . *303 [H]e remembered a black male that came in to get a room using a credit card. He described him as a heavy set black male about six feet 200, 210 pounds. . . . Wearing thick framed glasses.[4]
¶ 22. "The Mississippi Supreme Court has held that admitting out-of-court statements made to the police during the course of their investigations is permissible." Gray v. State, 931 So.2d 627, 631(¶ 14) (Miss.Ct.App.2006). "It is elemental that a police officer may show that he has received a complaint, and what he did about the complaint without going into details of it." Swindle v. State, 502 So.2d 652, 658 (Miss.1987). The Supreme Court stated in Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) that any out-of-court statement that is "testimonial" in nature is not admissible, unless the declarant is unavailable to testify in court, and the defendant has had a prior opportunity to cross-examine him or her.
¶ 23. The trial court allowed the testimony as part of the detective's course of investigation; however, because the testimony went to the content of the manager's interview, it did not just include the steps and process the detectives took during their investigation and, therefore, should not have been allowed as within the scope of the police investigation. The error was, however, harmless since the Cabot Lodge manager, Doug Clark,[5] did testify. Since Mr. Clark testified during the trial, Crawford v. Washington does not apply, because Smith was at trial and he had the opportunity to cross-examine or to confront his accuser. Crawford, 541 U.S. at 59, 124 S.Ct. 1354. We find that the trial court erred by allowing Detective McDonald's testimony of the Cabot Lodge manager's description of the credit card user; however, that error was harmless.
iv. Kevin Wakefield Statements
¶ 24. Smith argues that Detective McDonald's testimony about what Kevin Wakefield told police was inadmissible hearsay. The State argues that the trial court told the witness not to comment on what other people say and to only explain the course of conduct which was prompted by the police. Detective McDonald testified:
Kevin got Ronnie Smith, and they left to go pick up some money. Kevin told him that he didn't have any money to buy gas with, but Smith told him that he had two credit cards that he had received in the mail. Said one was his and one was his father's, and that he would purchase some gas. They left and went to Auto Zone on Ellis and Highway 80. There Mr. Wakefield bought parts for his car and for his father's car. Once they left there, they went to Wal-Mart Highway 18 and Greenway Drive. Ronnie told Kevin that he needed cash. So he went there and purchased a television in order to sell it to get cash money for it. He purchased a television. And once they left Wal-Mart, they went to a place Kevin called the bottom which is over off of Lindsey Drive. And there Ronnie *304 Smith sold the television to one of Kevin's friends for $60.00.
¶ 25. Over the objection of Smith, the trial judge allowed this testimony as within the scope of Detective McDonald's investigation. However, even after that instruction, Detective McDonald continued to state the content of Kevin Wakefield's statements. Under Crawford, this would be considered testimonial and, therefore, inadmissible. Id. The trial judge, therefore, erred. However, we find the error to be harmless as Wakefield later testified on the stand and Smith had the opportunity to cross-examine him.
v. Wal-Mart Employee Statements
¶ 26. The appellant argues that Detective McDonald's testimony about what the Wal-Mart employee told him was inadmissible hearsay. Detective McDonald testified:
During the course of investigation while at Wal-Mart, I talked to crime prevention, Ms. Angie Summers. She advised me that only two TVs were purchased that night, and one was purchased with a Discover Card. She said that she probably had video of it. And if I could come back later on that day, she would have it for me. And which later on that day, I went back and recovered the vehicle and logged it in as evidence.
¶ 27. This testimony is within the scope of the detective's investigation and, therefore, not hearsay. The testimony was given to show the steps the police took in their investigation. The detective was explaining how and why he got the video during the course of the investigation. The testimony did not state who was purchasing the television. Instead it focused on the process to determine who purchased the televisions that evening. These statements are not hearsay and are, therefore, admissible. We find that the trial court did not abuse its discretion by allowing the testimony.
vi. Validation of Wal-Mart Computer Receipt
¶ 28. Smith also argues that Detective McDonald was able to validate a Wal-Mart credit card receipt without proper foundation from the credit card companies. The trial court allowed the receipt to be admitted into evidence over the appellant's objection for improper foundation.
¶ 29. Detective McDonald testified:
Q: I want to show you another receipt. Can you please explain to the ladies and gentlemen of the jury what that receipt is for or where it came from?
A: This is a receipt for purchase of a TV from Wal-Mart. It cost $139.06 and was purchased on the Discover Card.
Q: On what date?
A: May 13th, 2002.
Q: And what is the bank card number?
A: XXXXXXXXXXXXXXXX.
Q: And does that receipt indicate what type of credit card was used for this purchase?
A: Yes, ma'am. It's a Discover Card.
Q: And, Detective, I'm going to hand you what's been previously marked as State's Exhibit S-14. And based on the information that you have, would that be a receipt that was purchased as related from that receipt from Discover Card?
A: Yes, ma'am, the same card numbers.
¶ 30. Mississippi Rule of Evidence 803(6) states that:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with *305 knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or self-authenticated pursuant to Rule 902(11)[6], unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness.
¶ 31. The trial judge abused her discretion in allowing the Wal-Mart receipt without proper foundation. No one from Wal-Mart authenticated the evidence before the judge allowed it to be admitted into evidence. However, this error was harmless due to the fact that Kevin Wakefield testified that he drove Smith to Wal-Mart, that he went into the store with Smith, they purchased a television, and used a credit card to pay. In addition, a security camera tape was admitted into evidence which showed both Wakefield and Smith walking through the Wal-Mart with the television and purchasing it. Smith was not prejudiced by the Wal-Mart receipt being admitted into evidence.
2. Gruesome Photographs
¶ 32. Smith then argues that photographs of Mr. Ellis's body in his home when police arrived and during the autopsy were offered repeatedly for no other purpose than to inflame the passion of the jury. The State argues that the trial court examined the photographs and determined that they were not unduly gruesome.
¶ 33. The admissibility of photographs rests within the sound discretion of the trial judge, but gruesome photos which have no evidentiary purpose and which only arouse the emotions of the jury should not be admitted. Garth v. State, 771 So.2d 984, 987(¶ 14) (Miss.Ct.App. 2000). The "discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." Id. However, "[t]he discretion we have afforded circuit judges is by no means unlimited, and we strongly urge that they curtail excess." Griffin v. State, 557 So.2d 542, 550 (Miss.1990). "When deciding on the admissibility of gruesome photos, trial judges must consider: (1) whether the proof is absolute or in doubt as the identity of the guilty party [and] (2) whether the photos are necessary evidence or simply a ploy on the part of the prosecutor to arouse the passion and prejudice of the jury." McNeal v. State, 617 So.2d 999, 1011 (Miss.1993).
¶ 34. The pictures in question are pictures of Mr. Ellis's body, in his house, face-down in a pool of blood, pictures of his pockets pulled out, and pictures taken during his autopsy. The photographs of Mr. Ellis in his home were shown to several of the witnesses throughout the trial, namely, Hazel Cannon, Dr. Steven Hayne, Detective Roberts, and Sharon Grisham-Stewart. The autopsy photographs were shown to the coroner, Sharon Grisham-Stewart.
¶ 35. Mrs. Cannon identified Mr. Ellis using the photographs and Dr. Hayne identified and testified as to the manner and cause of death using the photographs. Smith argues that the State prejudiced the jury by using the photographs with these two witnesses and then repeated the use for no relevant factors with Detective Roberts and Grisham-Stewart.
¶ 36. We find, as the State contends, that the photographs have substantial probative *306 value. The pictures were shown during the direct questioning of Detective Roberts for the purposes of establishing how the police found the body and the setting of the crime scene. The pictures taken at Mr. Ellis's house were shown during Grisham-Stewart's testimony to show the color of the blood around the body and how it had started to coagulate. This evidence was presented to show one way of estimating Mr. Ellis's time of death. The autopsy photographs were shown during Grisham-Stewart's testimony to show the cuts' depth and location. The pictures were used to identify the victim, to depict the victim as found at the scene of the murder, and to help corroborate the State's position as to the cause of death. Therefore, the court did not abuse its discretion because the photos were probative for use in eliciting facts and circumstances from witnesses.
3. Weight of the Evidence
¶ 37. Smith argues that the prosecution never produced direct evidence that he killed Mr. Ellis while engaged in the commission of a robbery. The appellant contends that the evidence presented does not rise to the level of beyond a reasonable doubt. The State argues that there was ample evidence showing the guilt of the defendant.
¶ 38. To determine whether a jury verdict is against the overwhelming weight of the evidence, the evidence which supports the verdict must be accepted as true and will be reversed only when convinced that the trial court has abused its discretion in failing to grant a new trial. Montana v. State, 822 So.2d 954, 967(¶ 61) (Miss.2002). We have repeatedly held that matters of weight are to be left up to the jury. Cooper v. State, 639 So.2d 1320, 1324 (Miss.1994). Only in cases "when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice" will a reviewing court disturb it on appeal. Herring v. State, 691 So.2d 948, 957 (Miss.1997).
¶ 39. "[D]irect evidence is unnecessary to support a conviction so long as sufficient circumstantial evidence exists to establish guilt beyond a reasonable doubt." Neal v. State, 805 So.2d 520, 526(20) (Miss. 2002). Where, as here, a case is built on purely circumstantial evidence we must determine "[i]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and to a theory of innocence . . . then a reasonable jury must necessarily entertain a reasonable doubt." Shields v. State, 702 So.2d 380, 382(11) (Miss.1997). "Each case must be determined from the circumstances shown in the testimony and the facts must consistently point to but one conclusion-guilt." Neal, 805 So.2d at 526(20).
¶ 40. There is sufficient circumstantial evidence for a jury to conclude that Smith was guilty even without direct evidence. Witnesses testified that Mr. Ellis's credit cards were missing after his death, that his pockets were turned inside out, that one card was used at several stores, and that Smith was in each of the stores where the card was used. In addition, there was video of Smith purchasing a television in Wal-Mart. Once police picked Smith up and took him to the police station, Smith asked what this was all about. This evidence was corroborated by Kevin Wakefield, Smith's friend who drove him to the different stores and witnessed Smith using the credit cards to purchase items. When police told Smith that he was being questioned about the stolen credit cards, he blurted out "I didn't kill my uncle" even before the police realized that he was related to Mr. Ellis. This Court finds that *307 there was ample evidence in the record for the jury's verdict.
4. Right to Remain Silent
¶ 41. During re-direct examination, Detective McDonald testified that "[after] I asked Ronnie where he got the credit cards from, he dropped his head." No objection was made by Smith at trial. Smith argues that the comment was a fundamental error which qualifies as plain error in violation of his Fifth and Sixth Amendment Rights to remain silent. The State argues that Smith's action of dropping his head was a physical response to the question. In addition, the defense did not make an objection at trial and now improperly brings it as plain error. The State also states that the defendant did not evoke his right to remain silent.
¶ 42. Mississippi law provides that "[i]f no contemporaneous objection is made, the error, if any, is waived." Walker v. State, 671 So.2d 581, 597 (Miss.1995). Application of the contemporaneous objection rule is not diminished in a capital case. Rubenstein v. State, 941 So.2d 735, 751(¶ 27) (Miss.2006). Therefore, any issue to which Smith failed to object is procedurally barred. Howard v. State, 507 So.2d 58, 63 (Miss.1987). However, if there is plain error, the appellate court may review the issue.
¶ 43. Mississippi Rule of Appellate Procedure 28(a)(3) states that "the court may, at its option, notice a plain error not identified or distinctly specified." In addition, Mississippi Rule of Evidence 103(d) authorizes a court to address "plain errors affecting substantial rights although they were not brought to the attention of the court." We may address an issue as plain error only when the trial court's error has impacted a fundamental right of the defendant. Berry v. State, 728 So.2d 568, 571(6) (Miss.1999) (quoting Sanders v. State, 678 So.2d 663, 670 (Miss.1996)). This plain error rule protects a party "when (1) he has failed to perfect his appeal and (2) when a substantial right is affected." M.R.E. 103(d); Moore v. State, 755 So.2d 1276, 1279(¶ 9) (Miss.Ct.App. 2000). To determine if plain error has occurred, we must determine "if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial." Cox v. State, 793 So.2d 591, 597(¶ 22) (Miss.2001).
¶ 44. Smith did not object to Detective McDonald's testimony at the time of trial and, therefore, the issue was not preserved for appeal. Now we must look to see whether a substantial right was affected. Smith argues that his fundamental right to remain silent during custodial interrogation was violated. The State argues that Smith never exercised his right to remain silent while being questioned.
¶ 45. The Mississippi Constitution states "[i]n all criminal prosecutions the accused shall . . . not be compelled to give evidence against himself." Miss. Const. Art. 3, § 25. The Fifth Amendment of the United States Constitution reads "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. However, "there can be no infringement upon the right to remain silent when the defendant does not exercise his right to remain silent when questioned at the time of the arrest." McCoy v. State, 878 So.2d 167, 171(¶ 5) (Miss.Ct.App.2004). A suspect invokes the right to remain silent by indicating in some way that he does not want to talk to authorities. Busick v. State, 906 So.2d 846, 856(¶ 21) (Miss.Ct. App.2005).
¶ 46. In this case, Smith never invoked his right to remain silent. He repeatedly *308 asked what he was doing at the police station. The police asked him about where he got the credit cards and Smith never indicated in any way that he was invoking his right to remain silent. Since Smith never invoked his right to remain silent, no substantial right was affected. Since no substantial right was affected, the plain error rule does not protect Smith and, therefore, the error is waived.
5. Fair Trial
¶ 47. This Court must also look to the effect of cumulative errors. This Court has an established practice in capital cases of considering trial errors for their cumulative impact.
[U]pon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we shall have the discretion to determine, on a case-by-case basis, as to whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative prejudicial effect.
Byrom v. State, 863 So.2d 836, 847(¶ 3) (Miss.2003). We find the errors that appear in the record in the instant case are individually harmless, and the cumulative effect of all errors committed during the trial did not deprive Smith of a fundamentally fair and impartial trial. The verdict of the trial court is affirmed.
¶ 48. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] In oral argument, it was argued that the appellant did object to the testimony in reference to Exhibit S-12, but after further review of the record it was discovered that an objection was not made.
[2] In oral argument, it was argued that the appellant did object to the testimony in reference to Exhibit S-13, but after further review of the record it was discovered that an objection was not made.
[3] The Cabot Lodge receipt was not objected to when admitted into evidence.
[4] Detective McDonald stated that he did not know the name of the person he spoke with nor did he remember who gave him the description.
[5] In the record it does not reflect whether Doug Clark was the same person that gave the description of the man who checked in to Detective McDonald; however, Mr. Clark does testify that "It was a gentleman checked in late or early one morning. And when we checked him in, we scanned the credit card and made and imprint of the credit card on his registration card."
[6] The Wal-Mart receipt does not meet the requirements for self-authenticating business records under Rule 902(11) of the Mississippi Rules of Evidence.