# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-00176-COA

**MARCUS McFARLAND A/K/A MARCUS TRAVELL McFARLAND**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:             10/04/2018
TRIAL JUDGE:                  HON. CHARLES W. WRIGHT JR.
COURT FROM WHICH APPEALED:    CLARKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       LESLIE D. ROUSSELL
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY:  JEFFREY A. KLINGFUSS
DISTRICT ATTORNEY:            BILBO MITCHELL
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 06/02/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     In a joint trial, a Neshoba County Circuit Court jury convicted Marcus McFarland and Jermeka Blakely of cocaine trafficking. This appeal concerns McFarland.  The trial court sentenced McFarland to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC).  McFarland now appeals his conviction and sentence, asserting three assignments of error:  (1) McFarland's constitutional right to be free from cruel and unusual punishment was violated by the allegedly unconstitutional application of the "trafficking" sentencing guidelines established under Mississippi Code Annotated section 41-29-139(f) (Rev. 2018); (2) McFarland's indictment was fatally defective because it identified the

controlled substance at issue, cocaine, as a Schedule I controlled substance instead of as a Schedule II controlled substance; and (3) McFarland's due process rights to a fair trial were violated under *Brady v. Maryland*, 373 U.S. 83 (1963), when the State did not timely disclose Donald Ray Arrington's alleged exculpatory testimony and his testimony was subsequently excluded at trial. Upon review, we find no error. We therefore affirm McFarland's conviction and sentence.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. McFarland and Blakely were jointly indicted in February 2018 by a Clarke County grand jury. McFarland's indictment stated that McFarland and Blakely "as part of a common plan or scheme or as part of the same transaction or occurrence in [Clarke] County . . . on or about [August 8, 2017,] . . . did wilfully, unlawfully, and feloniously and knowingly traffic 118.379 grams of Cocaine, a Schedule I controlled substance, in violation of [Mississippi Code Annotated] [s]ection 41-29-139(f)(c) [(Rev. 2018)] . . . ." McFarland waived arraignment and entered a plea of not guilty in March 2018.

¶3. Defendants McFarland and Blakely were tried jointly in a jury trial beginning September 11, 2018, in the Clarke County Circuit Court. They were represented by separate counsel. The trial transcript reflects that McFarland had a habeas corpus proceeding in September 2017 (one year before he was tried), but the record does not contain McFarland's petition for writ of habeas corpus or the transcript from his habeas corpus proceeding.

¶4. During voir dire, the trial court told counsel for each defendant they did not have to announce the witnesses they sought to present at that time, but, if they wished, they could

2

announce any witnesses they had in order for the trial court to conduct voir dire. McFarland's counsel told the trial court, "None on behalf of Mr. McFarland." Blakely's counsel stated, "Your Honor, it's a possibility defense may call Mr. Donald Ray Arrington."

¶5.     After the jury was empaneled and sworn in, the court held a recess. Blakely's counsel confirmed that he sought to call Arrington as a witness and summarized Arrington's proposed testimony as follows:

> [Arrington] would testify that he was present in the area . . . near the scene, and he observed the officers exit the vehicle, go up to two gentlemen [the defendants] who were speaking . . . at the front of the vehicle. They were detained and searched. The car was searched, the area was searched, and that [the] police left shortly thereafter. [H]e would testify that he didn't see either of the defendants make any overt movements, attempt to flee, throw down anything, exchange anything during this entire time that he witnessed the incident.

¶6.     Blakely's counsel also told the trial court that Arrington had apparently attended an earlier habeas corpus hearing for McFarland in September 2017, and that Arrington told him that he had spoken "to the sheriff about what he witnessed" after that hearing. McFarland's trial counsel informed the trial court that he was not McFarland's counsel at the time of his habeas corpus hearing and that he did not know about Arrington until the night before trial.

¶7.     Blakely's counsel told the State about Arrington for the first time that morning, and Arrington was at the courthouse at his request. The State interviewed Arrington during the lunch recess and learned in that interview that there was at least one other man (later identified as Terry Roberts) with Arrington on the day of the incident.

¶8.     The State moved to exclude Arrington's late-disclosed testimony and also informed the trial court that in the course of interviewing Arrington, it learned about Roberts, and it

3

would need time to interview this witness if the trial court did not exclude Arrington's testimony.

¶9.     Blakely's counsel said that he did not know of Arrington's existence until the night before trial began; he told the State about this witness that morning of trial; and he did not know about the other witness (Roberts) until he learned that Arrington mentioned him when he was interviewed by the State that morning. Blakely's counsel also told the trial court that neither Arrington nor Roberts were under subpoena. The trial court took the matter under advisement at that point and, on its own motion, issued an instanter subpoena to have both Arrington and Roberts present to allow the State an opportunity to interview Arrington again and interview Roberts.

¶10.    The State's first witness was Ben Ivy, a narcotics agent with the Clarke County Sheriff's Department. He testified that he and Agent Mike McCarra were driving through a neighborhood in Shubuta, Mississippi, on August 8, 2017. Agent McCarra was driving his truck and he (Agent Ivy) was in the passenger seat. Agent Ivy saw two men, McFarland and Blakely (he knew them by sight), bent over the trunk of a Nissan Maxima. Agent Ivy also testified that he saw a bag the size of a softball sticking up out of the trunk with a white substance in it that he believed to be cocaine. Ivy testified that he said to Agent McCarra that the men "had dope." Agent McCarra also testified for the State and corroborated Agent Ivy's testimony on this point, and both he and Agent Ivy testified that McCarra then turned the truck into the yard where the Maxima was parked.

¶11.    Agent Ivy testified that as they pulled up, he saw McFarland remove the plastic bag

4

with the white-powder substance from the trunk and hand it to Blakely. He said that Blakely began to walk away and threw this bag into some nearby bushes. Agent McCarra testified that from where he was he did not see anything thrown into the bushes.

¶12. Both agents testified that they told Blakely to stop and Agent McCarra was able to keep Blakely from leaving the scene. Agent Ivy walked over to McFarland, who at that point was standing at the rear end of the Maxima. Agent Ivy testified that he saw scales in the trunk of the car that were still "powered on," a bag of marijuana on the front passenger seat in plain view, and a firearm by the gear shift next to the marijuana. He testified that he then handcuffed McFarland and told Agent McCarra what he had seen. Agent McCarra testified that he then handcuffed Blakely, and McFarland and Blakely were put in Agent McCarra's truck. Agent Ivy testified that after the men were handcuffed, "people started coming, walking out onto their lawn, videoing us with their cell phones."

¶13. Agents Ivy and McCarra testified that backup was called and that Justin Rawson, who was a deputy at the time with the Clarke County Sheriff's Department, arrived after McFarland and Blakely were handcuffed. Agents Ivy and McCarra and Deputy Rawson all testified that Deputy Rawson found the bag of cocaine in the bushes. Agent Ivy testified the scales were recovered from the Maxima's trunk, and they also recovered the marijuana. He also testified that $4,800 in cash and another bag of marijuana were found in Blakely's pockets. A gun was also located in the car, which Blakely claimed that he owned. Both Agents Ivy and McCarra testified that the bag of cocaine was secured into the evidence locker and sent to a lab for testing. The State's witness, Jaime Johnson, who was accepted

without objection as an expert in the field of chemistry and narcotics analysis, testified that she analyzed the white powdery substance collected from the scene and determined it was cocaine.

¶14. The State rested its case. McFarland moved for a directed verdict, which the trial court denied. After the State rested and the trial court denied McFarland's motion for a directed verdict, the trial court again re-visited the State's motion to exclude any testimony from Arrington and ultimately ruled that Arrington's testimony would be excluded. We will address additional facts relating to this issue in our discussion below.

¶15. After the State's motion to exclude Arrington's testimony was granted, the defense rested without calling any witnesses. The jury unanimously found McFarland and Blakely guilty of trafficking cocaine. After allowing for a pre-sentencing investigation, the trial court conducted a sentencing hearing for McFarland on October 4, 2018. The trial court sentenced McFarland to serve a term of twenty years in the custody of the MDOC, with McFarland being ineligible for parole or probation during the first ten years of the sentence pursuant to section 41-29-139(f)(1). McFarland was also ordered to pay a fine of $10,000.00, a twenty-dollar crime lab fee, and court costs of $445.50, all due upon his release from the MDOC. McFarland filed a motion for judgment notwithstanding the verdict or in the alternative, a new trial, which the trial court denied. McFarland appeals.

## DISCUSSION

### I. The Constitutionality of Section 41-29-139(f), As Applied

¶16. McFarland asserts that the statutory sentencing provisions under section 41-29-139(f),

as applied, constitute cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution and Article 3, Section 28 of the Mississippi Constitution (prohibiting cruel or unusual punishment) because these provisions authorize the same sentence for a person who *sells* 118 grams of cocaine (*see* section 41-29-139(f)(2)(A))[1] and for a person who *possesses* 118 grams of cocaine. *See* Miss. Code Ann. § 41-29-139(f)(2)(C).[2]

¶17.    We find no merit in this assignment of error. In *Stromas v. State*, 618 So. 2d 116, 123 (Miss. 1993), the supreme court recognized that "[d]rug offenses are very serious and the public has expressed grave concern with the drug problem. The legislature has responded in kind with stiff penalties for drug offenders. It is the legislature's prerogative and not this Court's to set the length of sentences." Following this principle, this Court addressed an argument similar to McFarland's in *Hathorne v. State*, 267 So. 3d 798 (Miss. Ct. App. 2018), *cert. denied*, 267 So. 3d 281 (Miss. 2019), as follows:

> [The defendant] also argues that both section 41-29-139(f)(2)(A) and section 41-29-139(f)(2)(C) subject an offender to the same punishment options regardless of whether there is an intent to transfer under subsection (2)(A) or simple possession under subsection (2)(C). The Legislature, however, has defined trafficking to include the possession of specific amounts of controlled substances, in this instance ethylone. It is our Legislature's prerogative to define crimes and set out punishment for offenders, and this prerogative is given great latitude.

---

[1] Section 41-29-139(f)(1) authorizes "imprison[ment] for a term of not less than ten (10) years nor more than forty (40) years" for the "transfer [or] possession with intent to transfer" a controlled substance (section 41-29-139(a)).

[2] Section 41-29-139(f)(1) also authorizes "imprison[ment] for a term of not less than ten (10) years nor more than forty (40) years" for the possession of a controlled substance (section 41-29-139(c)).

*Id.* at 801 (¶10) (citation and internal quotation mark omitted). We find the same analysis applicable here.

¶18. Specifically regarding McFarland's constitutionality argument, "in the context of our habitual statutes, as well as in sentencing other offenders," *Stromas*, 618 So. at 123, the supreme court "has recognized the broad authority of the legislature and trial court[s] in this area and ha[s] repeatedly held that where a sentence is within the prescribed statutory limits, it will generally be upheld and not regarded as cruel and unusual." *Id.* at 123-24. This Court follows the same principle. *See, e.g.*, *Passman v. State*, 937 So. 2d 17, 24 (¶23) (Miss. Ct. App. 2006); *Maldonado v. State*, 796 So. 2d 247, 261-62 (¶¶44, 47) (Miss. Ct. App. 2001).

¶19. In this case, McFarland was sentenced to twenty years, well within the statutory guidelines under section 41-29-139(f)(1), which allows for "imprison[ment] for a term of not less than ten . . . years nor more than forty. . . .years." Accordingly, under the precedent discussed above, we find McFarland's assignment of error on this point without merit.

## II. Defective Indictment

¶20. McFarland asserts that his indictment was fatally defective because it identified the controlled substance at issue, cocaine, as a Schedule I controlled substance when it is actually a Schedule II controlled substance. We "review[] de novo the question of whether an indictment is fatally defective." *Townsend v. State*, 188 So. 3d 616, 619 (¶10) (Miss. Ct. App. 2016). Our review of the record reveals that McFarland did not object to the indictment at trial. As we will explain below, the incorrect classification of cocaine in the indictment was one of form, not of substance, and thus McFarland, by failing to object at trial, waived

8

this issue for appellate review. *See Jerninghan v. State*, 910 So. 2d 748, 750 (¶4) (Miss. Ct. App. 2005) ("When the formal defect is curable by amendment the failure to demur to the indictment in accordance with our statute will waive the issue from consideration on appeal." (citations and internal quotation marks omitted)).

¶21.    Procedural bar notwithstanding, we also address the merits of this assignment of error, and find that it does not warrant reversal. Mississippi Rule of Criminal Procedure 14.1 provides that "[t]he indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." As the supreme court has held:

> An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense.

*Gilmer v. State*, 955 So. 2d 829, 836-37 (¶24) (Miss. 2007).

¶22.    The indictment in this case provided that McFarland and Blakely "as part of a common plan or scheme or as part of the same transaction or occurrence in [Clarke] County . . . on or about [August 8, 2017,] . . . did wilfully, unlawfully, and feloniously and knowingly traffic 118.379 grams of Cocaine, a Schedule I controlled substance, in violation of [Mississippi Code Annotated] [s]ection 41-29-139(f)(c) . . . ."

¶23.    The trafficking statute, section 41-29-139(f), provides:

> Trafficking. (1) Any person trafficking in controlled substances shall be guilty of a felony and, upon conviction, shall be imprisoned for a term of not less than ten (10) years nor more than forty (40) years . . . .   The ten-year

mandatory sentence shall not be reduced or suspended. The person shall not be eligible for probation or parole, the provisions of Sections 41-29-149, 47-5-139, 47-7-3 and 47-7-33, to the contrary notwithstanding.

. . . .

(2) "Trafficking in controlled substances" as used herein means:

. . . .

(C) A violation of subsection (c) of this section involving thirty (30) or more grams. . . of a *Schedule I or II controlled substance* except marijuana and synthetic cannabinoids . . . .

(Emphasis added). "[S]ubsection c" referenced in Section 41-29-139(f)(2)(C) provides that "[i]t is unlawful for any person knowingly or intentionally to possess any controlled substance" that is not obtained by a valid prescription, and specifies that the penalties for any violation "with respect to a controlled substance classified in *Schedules I, II*, III, IV or V . . . shall be based on . . . the weight of the controlled substance." (Emphasis added).

¶24. Upon review of the plain language of the indictment and the applicable charging statute, we find that the reference in the indictment to cocaine as a Schedule I rather than a Schedule II controlled substance did not render the indictment fatally defective. This is so because the nature of the charge and its penalty in this case is governed by the weight of the cocaine involved, not whether it is identified as a Schedule I or II controlled substance.

¶25. In particular, a violation of the trafficking statute occurs in instances "involving thirty . . . or more grams . . . of a Schedule I *or* II controlled substance," Miss. Code Ann. § 41-29-139(f)(2)(C) (emphasis added); and the penalty imposed is based upon "the weight of the controlled substance," Miss. Code Ann. § 41-29-139(c), not by its classification. As such,

10

the indictment was not fatally defective. *Cf. Jones v. State*, 215 So. 3d 508, 512 (¶12) (Miss. Ct. App. 2017) (indictment lacking weight of cocaine was not defective where penalty was the same regardless of the precise quantity sold); *Fair v. State*, 93 So. 3d 56, 58-59 (¶¶6-8) (Miss. Ct. App. 2012); *Smith v. State*, 973 So. 2d 1003, 1006-07 (¶10) (Miss. Ct. App. 2007).

¶26.    Applicable case precedent establishes that "so long as from a fair reading of the indictment, taken as a whole, the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." *Harrison v. State*, 722 So. 2d 681, 687 (¶22) (Miss. 1998). Further, "the purpose of the indictment is to provide the accused reasonable notice of the charges against him so that he may prepare an adequate defense." *Ludwig v. State*, 147 So. 3d 360, 362 (¶6) (Miss. Ct. App. 2014); *Stepp v. State*, 958 So. 2d 257, 259 (¶7) (Miss. Ct. App. 2007). In this case the indictment cited the charging statute, it named the substance involved (cocaine), and included the weight of the cocaine (118.379 grams)—McFarland was plainly notified of the nature of the charge against him and the potential penalties he faced. We find no merit in this assignment of error.

### III.    Exclusion of Arrington's Testimony and the State's Purported *Brady* Violation

¶27.    McFarland told the trial court—twice—that he was *not* requesting to present Arrington as a defense witness at trial. Nevertheless, McFarland asserts that the trial court erred when it excluded Arrington's testimony at trial, thus depriving McFarland of his due process right to a fair trial. According to McFarland, the State learned what Arrington knew when Arrington attended McFarland's habeas corpus hearing in September 2017 (one year before McFarland was tried) and talked to Clarke County Sheriff Kemp after that hearing.

11

Although Arrington attended McFarland's *own* habeas corpus hearing—at the request of one of McFarland's family members—McFarland asserts that the State purportedly withheld exculpatory or impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), when it did not disclose what Arrington knew to the defense. McFarland asserts that had the State timely disclosed what Arrington knew, "there is no doubt that any competent defense attorney would have called Mr. Arrington to testify." For the reasons addressed below, we find this assignment of error to be without merit.

¶28. As an initial matter, we find that McFarland did not preserve this issue for appellate review. Our review of the record reveals that McFarland's counsel did not join in Blakely's request to present Arrington's testimony at trial, and, in fact, he affirmatively told the trial court that he did not intend to call Arrington or Roberts (another purported witness to McFarland's and Blakely's arrests) on McFarland's behalf:

| [THE COURT]: | Now, I'm assuming these two witnesses [Arrington and Roberts] are . . . requested by Defendant Blakely to be presented in their defense? |
|---|---|
| [BLAKELY'S COUNSEL]: | Correct, Your Honor. |
| [THE COURT]: | And not as to Mr. McFarland; is that correct? |
| [McFARLAND'S COUNSEL]: | That is correct, Your Honor.[3] |

---

[3] The State's only response to McFarland's contentions with respect to this assignment of error is that both counsel for Blakely and counsel for McFarland "indicated they were NOT requesting [Arrington] to testify." Our thorough review of the record, however, indicates that this is incorrect. Although, as stated, McFarland counsel's affirmatively told the trial court he was not requesting that either Arrington or Roberts be allowed to testify, Blakely's counsel affirmatively sought to present Arrington's testimony at trial, and at one point sought to present Roberts' testimony at trial, a request that he later

12

¶29. Just before issuing its ruling, the trial court again sought confirmation from McFarland's counsel that he did not intend to present Arrington as a witness:

> [THE COURT]: . . . and Defendant McFarland has taken the position that he's not requesting [Arrington] to testify. Is that correct on behalf of Mr. McFarland?
>
> [McFARLAND'S COUNSEL]: That is correct, Your Honor.

¶30. After the trial court granted the State's motion to exclude Arrington's testimony, Blakely's counsel objected, and the trial court overruled his objection. McFarland's counsel made no objection.

¶31. McFarland asserts that "[t]he fact that McFarland's attorney did not object to Arrington and Roberts[] testifying implied that he acquiesced to said testimony because he knew it would help McFarland." But McFarland's counsel twice assured the trial court that he did not intend to call either Arrington or Roberts, and he failed to object after the trial court issued its ruling excluding Arrington's testimony. Further, the record reflects that McFarland's counsel did not join, or participate, when Arrington's testimony was proffered. *See* M.R.E. 103(a)(2) ("A party may claim error in a ruling to . . . exclude evidence only if the error affects a substantial right of the party and . . . [the] party informs the court of its substance by an offer of proof. . . .").[4] Under these circumstances, we find that McFarland's

_____

withdrew.

[4] We also observe that McFarland's trial counsel and Blakely's trial counsel told the trial court that there was no joint defense agreement, thus we see no basis for an argument that because it was a joint trial, Blakely's request to present Arrington's testimony would be effective as to McFarland. In fact, McFarland's trial counsel filed a motion to sever his case prior to the start of trial. *Cf.* Eric Parnes & Jason M. Licht, *Appeals*, 89 Geo. L.J. 1783,

lawyer's mere "acquiescence" was not sufficient to preserve exclusion of Arrington's testimony for appellate review.

¶32. Just as "[a] party who fails to make a contemporaneous objection at trial must rely on plain error to raise the issue on appeal because it is otherwise procedurally barred," *Smith v. State*, 984 So. 2d 295, 301 (¶14) (Miss. Ct. App. 2007), we find that a party must likewise rely on plain error when, as here, the party fails to request that particular evidence be admitted in its favor, fails to object when that evidence is subsequently excluded, and does not participate in the proffer of the excluded evidence.[5]

¶33. "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." *Id.* "Further, [the] Court applies the plain error rule only when it affects a defendant's substantive/fundamental rights." *Id.* In this case, McFarland asserts that his due process rights were violated when Arrington's testimony was excluded. McFarland has the burden of establishing "a plain-error basis to justify appellate review." *Wilson v. State*, 276 So. 3d 1241, 1259 (¶45) (Miss. Ct. App. 2018), *cert. dismissed*, 276 So. 3d 660 (Miss. 2019). We now review McFarland's due process claim for

---

1800 (2001) ("In a trial with multiple defendants, an objection is usually only effective for the defendant on whose behalf it is raised.").

[5] We recognize that McFarland raised this issue in his motion for a new trial, as follows: "The Court erred in refusing to allow the testimony of witnesses that could have provided possible exculpatory testimony for Defendant." As the Mississippi Supreme Court has found, however, "raising objections in a motion for new trial which should have been made at trial has never been thought to cure the failure to object at the proper time." *Ross v. State*, 954 So. 2d 968, 987 (¶30) (Miss. 2007). Accordingly, the supreme court in *Ross* held that because no contemporaneous objection had been made, "we will not address the issue unless the trial court committed plain error." *Id.* at 988 (¶30).

14

plain error.

¶34.    We begin by briefly summarizing the additional facts and proceedings relevant to McFarland's assertions on this issue.  Our review of the record reveals that when the trial court re-visited the State's motion to exclude Arrington's testimony, Blakely's counsel proffered Arrington's testimony, and the State was allowed to opportunity to cross-examine Arrington.  McFarland's counsel did not participate in the proffer.

¶35.    Arrington testified that he saw the entire incident from across the street and that he never saw any cocaine, never saw McFarland or Blakely exchange anything, never saw Blakely get rid of anything, and he never saw Blakely try to evade either of the officers that were present.

¶36.    Arrington also testified that in September of 2017 he attended a hearing[6] for McFarland at the request of one of McFarland's family members.  He said that he did not testify at the hearing, but that he was in court and he heard the testimony of the officers. After the hearing was over he saw Clarke County Sheriff Todd Kemp. Arrington testified that he walked over to him and said, "'Todd, that [what] went on in there, that wasn't right. . . [b]ecause I was there. . . . [I]f those people have me to come to court to testify . . . I'm going to tell what I saw.' He said, 'You be sure you tell what you saw.'"

¶37.    On cross-examination, the State asked Arrington, "when you spoke to the sheriff and said 'What went on in there, that ain't right,' did you provide him any of the details that you provided to the Court today?"  Arrington responded, "No. No."

---

[6] Blakely's counsel clarified that this was McFarland's habeas corpus hearing.

¶38.    The trial court ultimately granted the State's motion to exclude Arrington's testimony. In its findings of facts and conclusions set forth in the record, the trial court stated that it required Blakely to proffer Arrington's testimony and that during that testimony "it became patently obvious" that the McFarland family knew of his existence as a potential witness. Additionally, the trial court found that Arrington "testified that he told the sheriff about his eyewitness account; however, on cross-examination, he only indicated that he stated to the sheriff that it wasn't right." With respect to this point, the trial court found that "there was no duty upon the sheriff to continue to investigate concerning Arrington's statement to him, that it did not have any substantive facts to support it . . . Therefore, the Court does not find that this would be . . . exculpatory evidence that should have been reviewed by the sheriff's department."

¶39.    Based upon these facts and the trial court's determination, McFarland asserts that the State knew of Arrington's existence in September 2017 (one year before his trial) when Arrington spoke to Sheriff Kemp after McFarland's habeas corpus hearing. McFarland further asserts that Arrington's brief exchange with Sheriff Kemp obligated the State to inform the defense of what Arrington knew. Despite the fact that Arrington attended McFarland's *own* habeas corpus hearing—*at the request of one of McFarland's family members*—McFarland contends that because the State did not inform defense counsel of Arrington's existence, the State improperly withheld exculpatory or impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and thereby deprived him of his due process right to a fair and impartial trial. We find that McFarland has failed to make a

16

cognizable *Brady* claim. We therefore find that McFarland has failed to demonstrate that this assignment of error warrants reversal upon plain error review.

¶40. "Under *Brady v. Maryland*, 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Lofton v. State*, 248 So. 3d 798, 810 (¶43) (Miss. 2018) (quoting *Brady*, 373 U.S. at 87). This includes impeachment evidence. *Manning v. State*, 929 So. 2d 885, 891 (¶15) (Miss. 2006). The supreme court has articulated a four-prong test applicable in determining whether a defendant has proven that a *Brady* violation has occurred, as follows:

> The defendant must prove: (a) that the State possessed evidence favorable to the defendant (including impeachment evidence); (b) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (c) that the prosecution suppressed the favorable evidence; and (d) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Id.* (citation omitted).

¶41. We review alleged *Brady* violations de novo, *Thomas v. State*, 45 So. 3d 1217, 1219 (¶7) (Miss. Ct. App. 2010), "though we defer to factual findings underlying the [trial court's] decision." *United States v. Swenson*, 894 F.3d 677, 683 (5th Cir. 2018). After review, we find that McFarland has not made a cognizable *Brady* claim.

¶42. First, we find no evidence in the record that the State "possessed" impeachment or exculpatory evidence with respect to Arrington. Citing *Kyles v. Whitley*, 514 U.S. 419 (1995), among other cases, McFarland asserts that the State was obligated to learn what Arrington knew because Arrington had spoken to Sheriff Kemp. *Id.* at 437. But the State

17

asked Arrington in cross-examination, "[W]hen you spoke to the sheriff and said 'What went on in there, that ain't right,' did you provide him any of the details that you provided to the Court today?" Arrington responded, "No. No." As the trial court found, Arrington's statement to Sheriff Kemp had no substantive facts to support it, and we find that Arrington's vague statement to Sheriff Kemp did not constitute exculpatory or impeachment evidence.

¶43. Even if we could find that the State had exculpatory or impeachment evidence with respect to Arrington, the supreme court has clearly held that such "evidence is not deemed suppressed if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *Lofton*, 248 So. 3d at 810 (¶43) (citation and internal quotation mark omitted). As the trial court found after listening to Arrington's proffer, "it became patently obvious" that the McFarland family knew of Arrington's existence as a potential witness. We defer to the trial court's factual determination on this point, *Swenson*, 894 F.3d at 683, and our own review of the record supports this finding. In the analogous context in which a defendant claims evidence is "newly discovered" for purposes of obtaining a new trial, the supreme court has held that "[e]vidence is not newly discovered where [the] accused knew of it but did not mention it to his counsel." *Townsel v. State*, 228 Miss. 110, 119, 87 So. 2d 481, 484 (1956). We find *Townsel* instructive here and, similarly, we find that under the circumstances here, McFarland and his trial counsel "knew or should have known" of Arrington's existence and what he knew.

¶44. Indeed, case precedent also establishes that the State is not obligated "to furnish a

defendant with exculpatory evidence that is fully available to the defendant or that could be obtained through reasonable diligence." *Lofton*, 248 So. 3d at 810 (¶43). *See Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997) ("The State has no obligation to point the defense toward potentially exculpatory evidence when that evidence . . . can be discovered by exercising due diligence."). McFarland's counsel told the trial court that he did not represent McFarland at his habeas corpus hearing in September 2017, and he did not file an entry of appearance in McFarland's case until April 2018. McFarland's counsel, however, also told the trial court that he discussed the case with McFarland "on numerous occasions" and the record reflects that the police report furnished by the State in discovery indicated that there were other people present when the incident occurred.

¶45.  In short, we find that even if McFarland could prove that the State "possessed" exculpatory or impeachment evidence with respect to Arrington, the State was under no obligation to furnish it to McFarland. *Lofton*, 248 So. 3d at 810 (¶43). McFarland has not established a *Brady* violation or that reversal based upon this assignment of error is warranted upon plain error review. We find that this issue is without merit.

¶46.  **AFFIRMED.**

**BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**